# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

December 7, 2017
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**SHIRLEY L. BURNS,**
**Claimant Below, Petitioner**

**vs.)  No. 17-0370** (BOR Appeal No. 2051530)
(Claim No. 2015002117)

**WEST VIRGINIA DEPARTMENT OF EDUCATION AND THE ARTS,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Mrs. Burns, through counsel, Patrick K. Maroney, argues that her exposure to methlyocyclohexyl methanol, commonly known as MCHM, exacerbated her lung conditions. The West Virginia Department of Education and the Arts, through counsel, Lisa Warner Hunter, argues that exposure to MCHM could not be traced to her work and even if it was it did not cause any change in her lung function. Our holding in Syllabus Point 3 of *Gill v. City of Charleston*, 783 S.E.2d 857 (2016), states that to the extent that an aggravation of a non-compensable pre-existing injury results in a discreet new injury, that new injury may be found compensable. Because Ms. Burns failed to show that her exposure to MCHM caused a discrete new injury, it was proper for her claim to be denied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mrs. Burns has a significant history of problems with her lungs dating back as early as 2010. In 2010, Mrs. Burns reported to Ashish Sheth, M.D., with West Virginia Primary Care for a checkup. She was diagnosed with deep vein thrombosis, black lung, hypertension, asthma, emphysema, heart disease, and gout. Mrs. Burns was also seen by Rachel Campbell, FNP, at West Virginia Primary Care for problems breathing. It was noted that she was on nighttime oxygen. Her breath sounds were described as poor with few bibasilar rhonchi. Dr. Sheth assessed respiratory failure, bronchial asthma, restrictive lung disease, depression, and anxiety.

1

A year prior to the alleged injury, Mrs. Burns's condition worsened and she was admitted to the hospital with abnormal heart rhythms and trouble breathing. Mrs. Burns was diagnosed with restrictive lung disease, obstructive sleep apnea, acute respiratory distress, and bronchial asthma. The following day, Mrs. Burns underwent a pulmonary function test. Her FEV1 was one liter which was 23% of predicted and her post-bronchodilator was 67% of predicted. She was diagnosed with severe chronic obstructive pulmonary disease based upon the test. She was seen five more times in the spring of 2013 with shortness of breath and underwent pulmonary therapy.

In the summer of 2013, Mrs. Burns underwent a pulmonary function test at Pulmonary Associates of Charleston, which revealed severe obstruction, moderate restriction, and a decreased DLCO. A high resolution CT scan revealed ground glass opacities in both lungs which could have been caused by a variety of inflammatory or infectious causes. William Wade, M.D., evaluated Mrs. Burns and opined that her condition was likely more than mere asthma as the symptoms and findings were out of proportion with asthma. He believed she might have bronchiolitis obliterans, which is a rare disease of the lungs that is irreversible and deadly. He suggested that she seek treatment at the Cleveland Clinic. Testing revealed abnormal levels of Alpha-1 antitrypsin, a protein normally found in the lungs and bloodstream. The protein helps protect the lungs from damage caused by inflammation. Mrs. Burns was advised to tell her family so that they could be tested, as it is genetic. Dr. Sheth saw Mrs. Burns for extreme fatigue and shortness of breath two more times over the summer and was diagnosed with respiratory failure, bronchial asthma, and restrictive lung disease.

On January 9, 2014, a 40,000 gallon holding tank containing MCHM ruptured, leaking its contents into the Elk River, which supplies Kanawha County's water supply. The MCHM was distributed across Kanawha County and citizens were advised to not use the water for any purpose. On January 14, 2014, Mrs. Burns reported to work as normal. She reported that the smell of the MCHM caused her to feel ill, and she was rushed to the emergency room at her doctor's recommendation. Her coworkers testified that she was short of breath, shaky, had a cough, and appeared sick. She also reported to them that she had a scratchy throat, itchy eyes, and dizziness. She was taken to Thomas Memorial Hospital and diagnosed with an asthma exacerbation caused by chemical exposure. An x-ray did not reveal an acute cardiopulmonary process. After treatment, Mrs. Burns was discharged and advised to return to work. After the injury, Mrs. Burns returned for treatment several times. She was diagnosed with restrictive lung disease and respiratory failure as well as many other issues. Mrs. Burns underwent another pulmonary function test which revealed severe chronic obstructive pulmonary disease.

In February of 2014, Mrs. Burns was admitted to the hospital with shortness of breath. She felt that her exacerbation may have been related to the odor from the water. Sometime in March of 2014, Mrs. Burns moved to Morgantown, West Virginia. She continued to see physicians for lung issues up to July of 2014. She stated that her symptoms improved somewhat since moving. On July 2, 2014, Mrs. Burns filled out a report of injury stating that her exposure to MCHM exacerbated her asthma. On July 25, 2014, the claims administrator denied her claim.

George Zaldivar, M.D., performed a record review. He stated that Dr. Wade's suspicion of bronchiolitis obliterans was reasonable, but as his note reflects, there was no assurance that

this was the diagnosis because a mosaic pattern in the CT scan is present in many diseases, whether due to vascular disease in the lungs or to airway disease. Dr. Zaldivar opined that the only way that a smell could cause an exacerbation of asthma is by being very noticeable in the environment, and to his knowledge, the water problem in Charleston had not been associated at all with the presence or exacerbation of asthma. The compound MCHM has not been blamed for any new development of asthma in the population. Dr. Zaldivar stated that whether Mrs. Burns's true diagnosis was asthma or some as of yet undiagnosed pulmonary problem, the exposure to the contaminated water could not have resulted in any permanent damage that would have worsened her respiratory condition.

Mrs. Burns underwent a lung CT scan. The impression was mild peripheral air trapping. There was no evidence of generalized interstitial disease and no evidence of emphysema. There was moderately severe bronchiectasis bilaterally. As part of the litigation, Mrs. Burns was deposed. She stated she arrived at work feeling fine. Once she was in the building she smelled a very strong smell. Within about forty-five minutes she started getting dizzy, her eyes started to itch, and her throat itched. Her chest began to compress and she had an asthma exacerbation. She tried to continue to work but she could not work after about forty-five minutes because her symptoms worsened. Her coworker heard her gasping and went to get the supervisor and another coworker called her husband. They got a wheelchair and pushed her to an elevator and down to the car because she did not have the strength to walk. She was taken by her husband to Thomas Memorial Hospital. She denied that she had ever been diagnosed with respiratory failure. She stated that she was not exposed to MCHM at her house because her brother, who lives in Wyoming County, brought up hundreds of gallons of water for general use. She denied that she was ever diagnosed with bronchiolitis obliterans.

Mrs. Burns was then examined by Dr. Hodder with West Virginia University Medicine. He diagnosed bronchiolitis obliterans and asked her about her desire for a lung transplant. Dr. Zaldivar issued an addendum to his prior record review based on new records. He stated that the October 6, 2015, CT scan showed bronchiectasis in all five lobes with no calcified nodules bilaterally, with air trapping. He opined that this showed that more than bronchitis and asthma were at play, and he suspected she had bronchiolitis obliterans. The doctor concluded that, based on all these records, MCHM played no role in her asthma nor did it cause an exacerbation.

The Office of Judges determined that Mrs. Burns was not injured in the course of and as a result of her employment. The Office of Judges noted that the evidence did not show that she was exposed to MCHM at work. The Office of Judges noted that the chemical spill had an effect on the whole Kanawha Valley so it would be difficult to trace her exposure to work. Further, the Office of Judges found that no new, discrete injury occurred. She had long standing and serious asthma issues which accounted for her symptoms. The Office of Judges found Dr. Zaldivar's report persuasive. He found that there was no evidence her alleged exposure could have caused her symptoms. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

After review, we agree with the findings of the Office of Judges as affirmed by the Board of Review. It was Mrs. Burns's burden to show that she received an injury in the course and as a

result of her employment. The Office of Judges found that it was not apparent if her exposure was at work. As noted by the Office of Judges, MCHM was all over the Kanawha Valley and it was very possible that Mrs. Burns was exposed to it many other times besides at work. More importantly, there was no evidence that the alleged exposure to MCHM would have resulted in any symptoms. The only medical report of record concluded that her exposure did not cause her symptoms. Because the evidence supports the finding that any alleged exposure would not have caused pulmonary impairment, the Board of Review was correct in affirming the Office of Judges.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 7, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

4