# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**GINA D. COCHRAN,**
**Claimant Below, Petitioner**

**FILED**

May 7, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 17-0722**  (BOR Appeal No. 2051821)
                    (Claim No. 2014029645)

**WEST VIRGINIA UNITED HEALTH SYSTEM,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Gina D. Cochran, by William C. Gallagher, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. West Virginia United Health System, by Katherine Arritt and Jeffrey Brannon, its attorneys, filed a timely response.

The issues on appeal are whether cervical radiculopathy and cervical stenosis should be added as compensable components of the claim and whether the proposed medical treatment is due to the injury. On January 11, 2016, the claims administrator denied a request to add cervical radiculopathy and cervical stenosis as compensable components of the claim. On February 24, 2016, the claims administrator denied a request for authorization of EMG/NCS testing of the right shoulder and denied authorization for cortisone injections. The Office of Judges reversed the claims administrator's January 11, 2016, decision and added cervical sprain/strain and cervical radiculopathy as compensable components of the claim. The Office of Judges also reversed the claims administrator's February 24, 2016, decision and authorized the requested medical treatment. In its July 18, 2017, Order, the Board of Review affirmed the addition of cervical sprain as compensable, reversed the addition of cervical radiculopathy as a compensable condition, and reversed the authorization for the EMG/NCS testing. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record

1

presented, the Court finds that the Board of Review's decision is based upon an erroneous conclusion of law, in part. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

Gina Cochran, a sonographer, was injured on April 5, 2014, when she was performing an ultrasound on a patient. She completed a report of injury on April 8, 2014, which shows she injured her shoulder girdle on April 5, 2014, when she was assisting a patient off an exam table and the patient reared back, causing resistance. She experienced sharp pain in her right shoulder area. The physician section of the form was completed by George Tokodi, D.O. He diagnosed a right shoulder sprain and subscapular bursitis in the right shoulder. The claims administrator held the claim compensable for a right shoulder sprain on April 22, 2014.

Prior to the April 5, 2014, injury, on May 22, 2009, Ms. Cochran had an MRI of the right shoulder which showed broad posterior spurs with accompanying discs at the mid and lower cervical spine resulting in moderate central canal stenosis at C3-C4 and C4-C5 and mild central canal stenosis at C5-C6. In a June 1, 2009, typed statement, Ms. Cochran noted she was performing ultrasounds on April 23, 2009, when she began to experience pain in her shoulder girdle and neck. In a first report of injury also dated June 1, 2009, Ms. Cochran alleged she was injured on April 23, 2009, due to repetitive motion when she was performing ultrasounds. She alleged injuries to her right shoulder, cervical spine, right scapula, and right humerus.

On April 29, 2014, Dr. Tokodi injected Ms. Cochran's right shoulder with Depo-Medrol. He noted she had a good response following the injection. He also noted he would need to perform an MRI if she continued to have problems. An August 1, 2014, right shoulder MRI revealed mild tendinopathy, a full-thickness anterior supraspinatus tear, possible mild partial thickness articular surface tear of the more posterior supraspinatus, and infraspinatus tendons with small subacromial subdeltoid bursa effusion. Comparison was made to a May 22, 2009, right shoulder MRI. The mild tendinopathy was seen on the previous study. However, the anterior supraspinatus tear was new, as was the possible mild partial-thickness articular surface tear.

Ms. Cochran underwent a right shoulder arthroplasty with subacromial decompression on November 20, 2014. The pre and post-operative diagnosis was right shoulder impingement. On April 27, 2015, the claims administrator authorized Dr. Tokodi's request to add sprain/strain to the scapula, trapezoid muscle, and subscapular bursitis to the claim. The compensable diagnoses now included right shoulder sprain/strain, right scapula sprain/strain, right rotator cuff tear, right trapezoid sprain/strain, and right subscapular bursitis.

A June 18, 2015, cervical MRI showed severe degenerative changes from C3 through C7 with large disc osteophyte complexes resulting in moderate to severe central canal narrowing and severe bilateral neuroforaminal narrowing at most levels. The claims administrator denied Ms. Cochran's request to add cervical disc herniation as a compensable condition on August 21, 2015. In an October 5, 2015, letter, Dr. Tokodi stated that Ms. Cochran had underlying cervical stenosis prior to her work injury. The cervical stenosis became symptomatic as a result of

2

increased use of her neck due to the inability to use her shoulder. She now had radicular pains down the right arm. Therefore, cervical radiculopathy and cervical stenosis should be added to the claim.

In a November 11, 2015, Diagnosis Update, Dr. Tokodi diagnosed cervical radiculopathy, cervical disc degeneration, spinal stenosis, and neck sprain. He noted Ms. Cochran continued to have pain in her right shoulder girdle and neck radiating down her right arm. Her cervical stenosis was asymptomatic prior to the injury, but she had developed cervical radiculopathy due to the increased use of her neck to compensate for her right shoulder. The MRI showed worsening of the spinal stenosis since the injury.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation on December 31, 2015. He diagnosed a rotator cuff sprain of the right shoulder that had been treated with subacromial decompression. He did not believe Ms. Cochran had an impairment as a result of the injury. He opined that the cervical stenosis was a degenerative condition and that cervical stenosis can cause cervical radiculopathy. Dr. Mukkamala found no objective evidence of radiculopathy. He opined that the cervical symptoms and cervical spondylosis were not related to the injury. Cervical stenosis is a degenerative condition. Dr. Mukkamala did not believe a neurosurgical consultation was necessary. He recommended Ms. Cochran participate in a self-administered stretching program for the neck and upper extremities.

The claims administrator denied a request to add cervical radiculopathy and cervical stenosis as compensable components of the claim on January 11, 2016. In a written note dated January 20, 2016, Dr. Tokodi recorded his disagreement with Dr. Mukkamala's opinion. Dr. Tokodi opined that Ms. Cochran had impingement of the shoulder and cervical radiculopathy, caused by the cervical stenosis. After the initial shoulder injury, she over-compensated and the cervical stenosis became symptomatic. Overcompensating with excessive movement in the neck aggravated the nerve roots going into the arm. She did not have the symptoms prior to the injury.

On February 16, 2016, in response to a grievance regarding the January 20, 2016, denial of the EMG/NCS testing, a re-review was completed. The claims administrator denied the testing on re-review as Ms. Cochran was at maximum medical improvement according to Dr. Mukkamala's December 31, 2015, report. EMG/NCS nerve testing performed on February 17, 2016, revealed moderate right carpal tunnel and chronic C8 and possible C7 radiculopathy on the right. In response to a grievance regarding the January 20, 2016, denial of cortisone injections, a re-review was completed on February 24, 2016. The claims administrator denied the cortisone injections on re-review Ms. Cochran had reached maximum medical improvement according to Dr. Mukkamala's December 31, 2015, report.

On March 11, 2016, Daryl Sybert, D.O., performed an orthopedic spine consultation. He diagnosed neck pain with underlying cervical stenosis with radicular right arm pain. On March 21, 2016, Ms. Cochran was seen by Kelly Lindsay, M.D., for complaints of neck and right upper arm pain. Dr. Lindsay diagnosed carpal tunnel syndrome and cervical radicular pain. He also opined she could have a brachial neuritis. In his opinion, Ms. Cochran needed to take care of the carpal tunnel syndrome as that was her biggest problem.

On March 24, 2016, Dr. Tokodi saw Ms. Cochran for follow-up. He noted she complained of pain and numbness in her right hand. The numbness started at her elbow and went to her wrist on the thumb side and appeared to be in a C5 and C6 distribution. He diagnosed right carpal tunnel syndrome and recommended a carpal tunnel release.

James Dauphin, M.D., performed an independent medical evaluation on April 4, 2016. In his opinion, the neck pain was secondary to the right shoulder condition, since Ms. Cochran had been using the neck to assist in lifting the right arm since the injury. Additionally, the degenerative disc disease in the cervical spine could be the result of repetitive motion and from the constant activity of holding her right arm up. Dr. Dauphin opined that the shoulder injury aggravated the pre-existing degenerative changes in the spine.

On May 4, 2016, Dr. Tokodi opined that when Ms. Cochran injured her right shoulder on April 5, 2014, she aggravated her cervical spondylosis. She injured her shoulder in 2009, but had been asymptomatic prior to the 2014 injury. On May 19, 2016, Dr. Tokodi noted Ms. Cochran's shoulder seemed to be doing fine, but she had radicular pain from the forearm into the thumb. He diagnosed a sprain of the right shoulder and persistent cervical radiculopathy.

Dr. Sybert evaluated Ms. Cochran on July 7, 2016. He diagnosed right upper extremity cervical radiculopathy with multilevel disc degeneration, spondylosis with primarily left-sided foraminal stenosis a C3-C7 and EMG-positive C8 or C7 radiculopathy. He recommended another cervical MRI. A July 11, 2016, cervical spine MRI revealed broad posterior spurs with accompanying disc material at C3-C4, C4-C5, and C5-C8, with moderate to severe canal stenosis. The findings were similar to the June 18, 2015, MRI findings. M. Barry Louden, M.D., performed EMG and NCS studies on July 15, 2016, which revealed slight improvement in the right carpal tunnel syndrome and moderate left carpal tunnel syndrome. The mild to moderate chronic radiculopathy was unchanged.

ChuanFang Jin, M.D., performed an independent medical evaluation on August 23, 2016, for the compensable diagnosis of right shoulder sprain/strain. Ms. Cochran presented with a chief complaint of right shoulder pain. Dr. Jin diagnosed right shoulder pain; degenerative right shoulder disease with radiographic evidence of a tiny full thickness rotator cuff tear and a partial cuff tear; degenerative arthrosis of the right shoulder with impingement, status post-surgical decompression; and radiographic evidence of severe/advanced degenerative cervical spine disease with multiple levels of spinal stenosis. In Dr. Jin's opinion, the medical evidence indicated that Ms. Cochran's symptoms were more likely from advanced cervical spine disease with neurological involvement. Dr. Jin opined that the spinal stenosis was not caused by the injury of April 5, 2014, but was the result of degenerative disease of the cervical spine. She further opined that the radiculopathy was the direct result of the degenerative disease of the cervical spine, as exhibited by the 2009 and 2016 MRIs. Pulling by a patient, Ms. Cochran's mechanism of injury, will not cause degeneration, nor will it accelerate the degenerative process. In Dr. Jin's opinion, the radiculopathy was the direct result of the degenerative disease. A cervical strain does not cause radiculopathy because it does not change the bony structure or ligament structure of the spine.

4

On October 13, 2016, Ms. Cochran was seen by Thomas Mroz, M.D., at Cleveland Clinic for scapular pain with radiation to the ulnar digits. Ms. Cochran provided a history of having daily posterior interscapular pain and paresthesia with radiation to her right shoulder which had become more intense over the last two years following her work injury. Dr. Mroz suggested that Ms. Cochran allow her C7-T1 epidural block to wear off and then proceed with a diagnostic anesthetic block to the right C6 and C7 nerve roots. If the blocks improved her pain, Dr. Mroz would recommend right C5-C6 and C6-C7 laminoforaminotomies.

In its January 11, 2017, Order, the Office of Judges examined the claim in light of *Gill v. City of Charleston*, 236 W.Va. 737, 783 S.E.2d 587 (2016), stating that a pre-existing condition could not be held compensable, but a new injury or aggravation of the pre-existing condition could be held compensable. It determined that the mechanism of injury described by Ms. Cochran could have caused a cervical sprain/strain and that a preponderance of the evidence supported the addition of cervical sprain/strain as a compensable condition. Therefore, it found the cervical strain compensable. The Office of Judges then moved on to the compensability of the cervical radiculopathy. It relied on the opinion of Dr. Dauphin who opined that Ms. Cox's shoulder limitations caused her to use her neck more, which aggravated the pre-existing conditions. It found that the radiculopathy was a new condition which was the result of the aggravation of Ms. Cochran's pre-existing degenerative changes in the cervical spine. As such, the Office of Judges found the cervical radiculopathy compensable. It also found that the aggravation of the pre-existing spinal stenosis was not compensable.

The Office of Judges then turned to the issue of the request for authorization of medical treatment including a cortisone injection and EMG/NCS testing. Because it found the claim compensable for a cervical sprain/strain and cervical radiculopathy, it found the requested medical treatment was medically related and reasonably required. Therefore, the Office of Judges authorized the treatment. It also ordered reimbursement for the EMG/NCS testing, as Ms. Cochran had moved forward with having the testing done and had paid for it herself.

On February 24, 2017, the claims administrator held the claim compensable for a right shoulder sprain/strain, cervical radiculopathy, and cervical sprain/strain. In a separate Order, the claims administrator authorized the cortisone injection of the right shoulder and an EMG/NCS of the right shoulder.

On July 18, 2017, the Board of Review adopted the Office of Judges' findings of fact, but did its own analysis and made its own conclusions of law. It affirmed the addition of cervical sprain/strain as a compensable condition and the authorization of the cortisone injection. It reversed the addition of cervical radiculopathy as a compensable component of the claim as well as the authorization for the EMG/NCS testing. The Board of Review also relied on *Gill v. City of Charleston*. However, it found that Ms. Cochran had pre-existing cervical stenosis and that the MRI findings from 2009 and 2015 were unchanged, other than the central canal stenosis may have been "somewhat worse" at C5-C6. Therefore, the Board of Review determined the medical evidence did not prove that the cervical stenosis and cervical radiculopathy were compensable

due to the injury. As the cervical radiculopathy was not compensable, the EMG/NCS testing was also denied.

After review of the evidence of record and consideration of the parties' arguments, we find that the Board of Review's decision was based on an erroneous conclusion of law. We agree with the Office of Judges as affirmed by the Board of Review that the claim is compensable for a cervical sprain/strain and that the cortisone injections should have been authorized. We also find the condition of cervical radiculopathy compensable. The aggravation of the stenosis, a pre-existing degenerative change, is not compensable. Ms. Cochran developed the cervical radiculopathy after the April 5, 2014, injury, due to her need to compensate for the inability to use her right shoulder. As the Office of Judges thoroughly explained, the evidentiary record supports the addition of cervical radiculopathy as a compensable condition. It also supports the compensability of the requested EMG/NCS testing.

For the foregoing reasons, we find that the decision of the Board of Review is based upon an erroneous conclusion of law. Therefore, the decision of the Board of Review is reversed and remanded, in part, and the Office of Judges', Order shall be reinstated.

Reversed and Remanded.


**ISSUED: May 7, 2018**


**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis
Justice Menis E. Ketchum
**DISQUALIFIED:**
Justice Elizabeth D. Walker
**DISSENTING**:
Justice Allen H. Loughry II

I dissent from the majority's decision to reinstate the Office of Judges' order holding the claim compensable for cervical radiculopathy and authorizing an EMG/NCS. It is undisputed that prior to the work-related injury, the claimant suffered from cervical stenosis, a degenerative condition that causes cervical radiculopathy. In *Gill v. City of Charleston*, 236 W.Va. 737, 783 S.E.2d 857 (2016), this Court held:

> A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a discreet new injury, that new injury may be found compensable.

6

In this case, there was no evidence that the claimant's April 5, 2014, injury aggravated her preexisting degenerative disease resulting in a discreet new injury. In that regard, Dr. Pasadarao Mukkamala found no objective evidence of radiculopathy. Moreover, Dr. ChuanFang Jin, M.D. explained that the type of injury suffered by the claimant–a sprain/strain cause by pulling on a patient–will not accelerate degenerative disease. She indicated that cervical radiculopathy is the direct result of degenerative disease in the cervical spine which was observed in MRIs of the claimant both before and after her work-related injury. Dr. Jin further explained that cervical strain does not cause radiculopathy. In sum, the evidence in the record does not support a compensability finding for the claimant's cervical radiculopathy pursuant to *Gill.* Because the cervical radiculopathy is not compensable, the EMG/NCS should not have been authorized. Therefore, I would have affirmed the Board of Review's decision.