# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**MURRAY AMERICAN ENERGY, INC.,**
**Employer Below, Petitioner**

**FILED**

June 26, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 19-0257** (BOR Appeal No. 2053431)
                      (Claim No. 2018013969)

**REX ASHLEY,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Murray American Energy, Inc., by Counsel Denise D. Pentino and Aimee M. Stern, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Rex Ashley, by Counsel Robert L. Stultz, filed a timely response.

The issue on appeal is additional compensable conditions. The claims administrator denied a request to add right shoulder impingement syndrome and cervical disc displacement to the claim on April 4, 2018. The Office of Judges reversed the decision in its September 18, 2018, Order and added the conditions to the claim. The Order was affirmed by the Board of Review on February 22, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Ashley, a coal miner, injured his right shoulder and back in the course of his employment when he tripped and fell on December 4, 2017. The Employee's and Physician's Report of Injury was completed that day by John Manchin, D.O., and indicates Mr. Ashley sustained a right shoulder contusion and radiculopathy as a result of the work-related injury.

A treatment note by Mon Health Medical Center dated December 7, 2017, indicates Mr. Ashley was treated for right shoulder pain, which developed after he fell at work. X-rays showed no abnormal findings in the right shoulder. Range of motion was painful but normal, and strength

1

and impingement testing were also normal. The diagnosis was listed as shoulder contusion. Mr. Ashley returned to Dr. Manchin on December 11, 2017. He reported that he developed shoulder pain immediately following his injury, but he was able to complete his work day. Mr. Ashley was unable to work the following day and sought medical treatment. He stated that his shoulder was fine prior to the injury. Dr. Manchin found decreased range of motion on examination. The claim was held compensable for right shoulder contusion on December 19, 2017.

A December 26, 2017, treatment note by Nathan Hundley, M.D., from Mon Health Medical Center, indicates Mr. Ashley was seen for right shoulder pain as well as numbness and pain in his elbow. Dr. Hundley recommended an MRI. Mr. Ashley saw Scott Benson, M.D., from Mon Health Medical Center, on January 1, 2018. The treatment note indicates Mr. Ashley was on his way to work when he experienced increased pain in his right shoulder. Range of motion was painful. Dr. Benson diagnosed chronic right shoulder pain. Two days later, Mr. Ashley was seen by Dr. Manchin who indicated he could not work for a few weeks due to right shoulder pain. Dr. Manchin's diagnosis was right shoulder contusion with sprain/strain.

A right shoulder MRI was performed on January 16, 2018, which showed subchondral cystic changes in this humeral head and moderate to severe hypertrophic degenerative spurring in the acromioclavicular joint with mild to moderate impingement. Mr. Ashley returned to Dr. Manchin on January 17, 2018, and reported that he remained unable to work due to shoulder pain. It was noted that a recent cervical MRI showed disc bulging at C5-6 and C6-7 causing mild stenosis. Dr. Manchin stated that Mr. Ashley complained of pain, numbness, and tingling in his right shoulder. He also had decreased range of motion in both the right shoulder and cervical spine.

Mr. Ashley was treated by Behrooz Tohidi, M.D., on January 31, 2018. Dr. Tohidi indicated that he found tenderness with range of motion testing in the right shoulder as well as a positive impingement test. Dr. Tohidi opined that the MRI was not clear enough and that Mr. Ashley's symptoms seemed to be related to the infraspinatus or supraspinatus tendon. He diagnosed right shoulder impingement syndrome. Dr. Tohidi administered an injection into the right shoulder the following day. Mr. Ashley returned on February 9, 2018, and reported that his shoulder pain, numbness, and tingling had returned. He also reported the new symptom of a pulling sensation in his shoulder when he moved his head back and forth. Dr. Tohidi opined that Mr. Ashley had both right shoulder and cervical injuries. He assessed right shoulder impingement syndrome and cervical disc displacement.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation on February 27, 2018, in which he noted slight range of motion deficits in the right shoulder. Dr. Mukkamala diagnosed right shoulder contusion and opined that Mr. Ashley had reached maximum medical improvement. He assessed 2% whole person impairment for the right shoulder.

On March 1, 2018, a cervical MRI was performed and showed large disc bulges at C5-6 and C6-7 causing mild spinal canal stenosis due to significant impression on the thecal sac and cervical cords. Mr. Ashley returned to Dr. Tohidi on March 8, 2018. Dr. Tohidi indicated that Mr. Ashley reported increased numbness and tingling in his shoulder as well as severe pain in his neck when moving his head down or back. Dr. Tohidi reviewed the cervical MRI and opined that the

C6-7 protruding disc was more than likely traumatically induced and did not appear to be degenerative. He further opined that the protruding disc was the result of the compensable injury. His diagnoses were right shoulder impingement and cervical disc displacement. He requested the conditions be added to the claim.

A March 19, 2018, treatment note by Scott Daffner, M.D., indicates he reviewed Mr. Ashley's medical records and imaging. He found that the MRI showed a disc bulge at C5-6 and a small herniation at C6-7. He noted that a cervical x-ray showed degenerative disc changes at multiple levels. Dr. Daffner diagnosed cervical degenerative disc disease with disc bulging, right rotator cuff strain/tendinopathy, and right biceps tendonitis. Dr. Daffner opined that the C6-7 disc bulge could be the cause of some of the right arm symptoms; however, he found that the majority of Mr. Ashley's right arm symptoms were the result of his right shoulder injury. He stated that it was difficult to tell if the cervical MRI findings are work-related, but since Mr. Ashley had no symptoms prior to the compensable injury, it is likely the findings are work-related.

On April 11, 2018, Mr. Ashley once again saw Dr. Tohidi. The treatment note that day indicates he recommended Mr. Ashley undergo right shoulder surgery. Dr. Tohidi found that Mr. Ashley had pain with active movement. He opined that the examination indicated rotator cuff pathology or a partial tear of the supraspinatus or infraspinatus tendon. Dr. Tohidi stated that the initial diagnosis of shoulder contusion was no longer valid based upon Mr. Ashley's subsequent and current medical findings.

In a June 22, 2018, supplemental report, Dr. Mukkamala opined that Mr. Ashley did not develop right shoulder impingement as a result of his compensable injury. He stated that the impingement was the result of crowding in the joint due to degenerative changes. To support his opinion, Dr. Mukkamala relied upon the right shoulder MRI, which showed preexisting hypertrophic degenerative spurring in the acromioclavicular joint. Dr. Mukkamala stated that the compensable injury caused a right shoulder contusion only. Regarding the cervical spine, Dr. Mukkamala opined that the disc displacement was not the result of the compensable injury. He found that the cervical changes were degenerative in nature and that his opinion as supported by the findings of Dr. Daffner, who also saw degenerative changes in the cervical imaging.

The claims administrator denied the addition of right shoulder impingement syndrome and cervical disc displacement as compensable conditions in the claim on April 4, 2018. The Office of Judges reversed the decision and added right shoulder impingement syndrome and cervical disc displacement to the claim in its September 18, 2018, Order. Regarding the right shoulder impingement, the Office of Judges found that the January 16, 2018, right shoulder MRI showed mild to moderate impingement. Further, both Drs. Tohidi and Daffner's clinical examinations were positive for right shoulder impingement. The Office of Judges further found that the right shoulder impingement was causally related to the compensable injury. Mr. Ashley testified in a deposition that he had no right shoulder issues prior to the compensable injury. About five days prior to the injury, he underwent a strenuous pre-employment physical, which he passed. Further, both Drs. Tohidi and Manchin opined that the right shoulder impingement resulted from the compensable injury. The Office of Judges noted that the employer argued that the right shoulder MRI showed degenerative changes. The Office of Judges opined that a preexisting condition, in and of itself,

does not prevent a claimant from sustaining a new injury to the same body part. Citing *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), the Office of Judges noted that if an aggravation of a preexisting condition results in a new injury, that new injury may be found compensable. The Office of Judge found in this case that Mr. Ashley's compensable injury resulted in a discrete new injury to the right shoulder. It further noted that no preinjury diagnostic imaging showed impingement syndrome in the right shoulder. The Office of Judges concluded that the opinions of Mr. Ashley's treating physicians, Drs. Tohidi and Manchin, were more reliable than that of Dr. Mukkamala.

In regard to the cervical disc displacement, the Office of Judges concluded that the diagnosis is related to the compensable injury. It found that the diagnosis was confirmed by MRI imaging. Dr. Tohidi opined that while the C5-6 bulge was due to degenerative disc disease, the C6-7 protruding disc was likely the result of trauma causally related to the compensable injury. Dr. Daffner also found that the C6-7 disc protrusion was likely the result of the compensable injury. Lastly, Dr. Manchin, Mr. Ashley's treating physician, completed a diagnosis update in which opined that the C6-7 disc displacement was the result of the compensable injury. The Office of Judge found no reliable medical evidence of record to dispute these physicians' findings. The Office of Judges noted that the employer relied on Dr. Mukkamala's opinion that the disc displacement was the result of degenerative changes. However, the Office of Judges found his opinion to be contrary to the weight of the medical evidence. The Office of Judges further determined that Mr. Ashley's one month delay in reporting cervical symptoms did not preclude a finding that the cervical disc displacement was compensable. The Office of Judges noted that West Virginia Code of State Rules § 85-20-6.6 provides that physicians are often unable to identify all compensable injuries immediately following the injury, and this is why diagnosis updates are permitted. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on February 22, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The weight of the medical evidence indicates that Mr. Ashley sustained right shoulder impingement as a result of his compensable injury. Prior to the injury, he had no symptoms or physical limitations in his right shoulder. Following the injury, diagnostic imaging showed evidence of impingement syndrome, and physical examinations by Drs. Tohidi and Manchin were positive for impingement syndrome. Likewise, cervical disc displacement was also properly added to the claim. Drs. Tohidi, Manchin, and Daffner all examined Mr. Ashley and determined that he suffered from cervical disc displacement at C6-7 as the result of his work-related injury. Dr. Mukkamala's opinion was the only of record to find that Mr. Ashley did not develop cervical disc displacement as a result of the compensable injury, and his opinion is not supported by the remainder of the evidentiary record.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: June 26, 2020**


**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison