**FILED**
**November 5, 2021**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**JOE D. BARGANSKI,**
**Claimant Below, Petitioner**

**vs.)**    **No. 20-0216** (BOR Appeal No. 2054671)
            (Claim No. 2018005926)

**CENTRE FOUNDRY AND MACHINE COMPANY,**
**Employer Below, Respondent**

**MEMORANDUM DECISION**

The petitioner, Joe D. Barganski, by counsel J. Robert Weaver, appeals the February 20, 2020, decision of the Workers' Compensation Board of Review ("Board of Review"). Centre Foundry and Machine Company, by counsel Alyssa A. Sloan, filed a timely response.[1]

The issues on appeal are whether an additional diagnosis is compensable and whether medical treatment for that diagnosis should be authorized. Specifically, by orders entered December 18, 2017, and February 8, 2018, the claims administrator denied septic knee as an additional compensable diagnosis and denied diagnostic testing, hospitalization, and surgical intervention for treatment of that diagnosis. The Worker's Compensation Office of Judges ("Office of Judges") affirmed those decisions by order entered on September 26, 2019.[2] The Board of Review upheld that decision by order entered on February 20, 2020.

---

[1] By letter dated May 17, 2021, Tracey B. Eberling appeared as counsel for Centre Foundry and Machine Company in place of Alyssa A. Sloan.

[2] The petitioner also appealed the claims administrator's March 18, 2018, order, which closed his claim for temporary total disability benefits. In its September 26, 2019, order, the Office of Judges reversed that decision and ordered that the petitioner be granted temporary total disability benefits as substantiated by proper medical evidence. The employer appealed, and the Board of Review upheld the decision of the Office of Judges granting the petitioner temporary total disability benefits in its February 20, 2020, order.

1

This Court has carefully reviewed the parties' briefs and the submitted appendices, and the case is mature for consideration.[3]  Upon review of the briefs, records, and applicable authorities, this Court finds that no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The petitioner, a maintenance worker, injured his right knee during the course of his employment with the respondent when he was demolishing a catwalk and slipped while carrying pieces of rusted steel and old wood.  At his June 21, 2018, deposition, the petitioner explained that

> my left foot went out from under me, and I kind of fell on my – my body weight down onto my right knee.  My right foot like landed under my butt.  I kind of just slipped. And everything fell down on me.

The petitioner filed a workers' compensation claim with a date of injury of September 1, 2017.[4]  The claim was held compensable with a diagnosis of right knee contusion based on an initial evaluation of the petitioner's injury by Corporate Health at Wheeling Hospital on September 7, 2017.

Following the initial exam, Corporate Health sent the petitioner to the Wheeling Hospital emergency room for further evaluation because of concerns of "internal derangement."  The petitioner was then referred to the orthopedic department where he was evaluated by Jeffrey Abbott, MD, an orthopedic surgeon.  The petitioner had suffered a previous right knee injury in February 2016 and had undergone knee replacement surgery on October 18, 2016.[5]  On September 14, 2017, Dr. Abbott diagnosed the petitioner with

---

The employer did not appeal that decision to this Court.  Therefore, the petitioner's receipt of temporary total disability benefits is not an issue in this appeal.

[3]  This case was scheduled for oral argument on October 5, 2021.  On September 22, 2021, the parties filed a joint motion to waive oral argument and to submit the appeal on briefs.  By order entered September 27, 2021, this Court granted the motion.

[4] During his deposition, the petitioner testified that the injury actually occurred on August 25, 2017, but that he did not have soreness, stiffness and swelling of his right knee until a week later.  He then told his employer that he needed to see a doctor.  According to the petitioner, he was asked by his supervisor to file his claim with an injury date of September 1, 2017, because his original report of the injury had been thrown away.

[5] According to the petitioner, his 2016 injury also occurred at work when he got his foot caught on a foot brake of a crane and "hyper extended" his knee.  The petitioner

2

an infection of his total right knee replacement, and he indicated that the petitioner needed "incision and drainage surgery with polyethylene liner exchange and static anabolic spacer." Based on his examination, Dr. Abbott requested that the petitioner's claim also be held compensable for the diagnosis of septic knee.

On September 18, 2017, Dr. Abbott performed the drainage surgery, which required the complete removal of the petitioner's knee replacement from his October 2016 surgery and the placement of an anabolic spacer. Dr. Abbott consulted with Yuriko Fukuta, MD, an infectious disease physician, regarding the petitioner's infection. In a September 19, 2017, consultation report, Dr. Fukuta indicated that he previously treated the petitioner in February 2016 when he suffered a MRSA infection, and this time "the fluid culture has grown Streptococcus viridans." In a November 1, 2017 letter, Dr. Fukuta further explained: "I took care of him last year when he had severe MRSA infection. I do not think his current infection is due to his previous infection as the causative organism is different."

After the petitioner's infection cleared, he had a third surgery on March 5, 2018, to take out the anabolic spacer and put in another knee replacement. Subsequently, the petitioner suffered yet another infection, which resulted in him undergoing a fourth surgery. According to the petitioner, his last surgery was to "clean out the infection and replace the hardware." At the time of his deposition, the petitioner remained under the care of Dr. Abbott.

With respect to whether the petitioner's septic knee diagnosis should be held compensable, Rebecca Thaxton, MD, opined in a September 26, 2017, Physician Review: "Blunt trauma to the right status post TKA knee on 9/1/17 could have compromised the tissue and increased the claimant's risk for knee/TKA infection." Conversely, D. Kelly Agnew, MD, an orthopedic surgeon who reviewed the claimant's medical records on behalf of the employer, opined in a November 20, 2017, report, that "the September 1, 2017 reported work site event did not cause septic total knee arthroplasty in this case." Dr. Agnew explained the basis for his opinion in his report as follows:

> Ultimately, Mr. Barganski was found to have a septic total knee arthroplasty. This is a recognized complication of total knee arthroplasty. His organism, streptococcus viridans, is considered normal flora in the respiratory tract but also can be involved in dental disease.
>
> . . . .

---

testified that he filed a worker's compensation claim for his 2016 injury, but it was not held compensable because he had pre-existing arthritis as a result of an injury to his knee when he was nineteen years old.

When Dr. Abbott performed the procedure of September 18, 2017, he identified not only gross purulence within the knee but also grossly loose implants at the femur and tibia. He clearly described large amounts of synovitis. He clearly described that upon passing an osteotome between the cement-bone interface at the femur there was "pus coming out."

Dr. Abbott's description is that of established or chronic joint infection. Hypothetically, had there been something to cause joint infection seventeen days ago, one would have expected some synovial involvement without bone or implant involvement. In this case, chronic involvement was described with infection extending beneath the implants both on the femur and the tibia and, in fact, gross loosening of those implants. Loosening of implants is not a finding consistent with a seventeen-day infection history. Rather, loosening of implants is a chronic infection finding.

Likewise, Syam B. Stoll, MD, who also reviewed the petitioner's records on behalf of the employer, opined in a December 8, 2017, Physician Review:

Based on the medical records that were provided for review in this claim, as well as review of the orthopedic surgery IME by Dr. Agnew, it is my medical opinion that I concur with Dr. Agnew and [sic] regarding the lack of objective documentation to support the following in regards to the claimant's right knee: hospitalizations, treatments, future reimplantation of his total knee arthroplasty, post-operative rehabilitation as being causally related to the accepted compensable diagnosis in this claim which is . . . contusion of the right knee, initial encounter.

As set forth above, the claims administrator denied the addition of septic knee as a compensable diagnosis and denied authorization for treatment of that diagnosis by orders entered on December 18, 2017, and February 8, 2018. In its September 26, 2019, order upholding those decisions, the Office of Judges found the reports of Drs. Agnew and Stoll to be persuasive. In that regard, the Office of Judges noted that

Dr. Agnew performed a record review and opined that there was no direct and causal relationship between the September 1, 2017 incident and the diagnosis of septic knee, the diagnostic testing, hospitalization, and surgical

4

intervention. All treatment was appropriate but identified a chronic process. He said any contusion sustained on September 1, 2017, would have long since resolved and further treatment . . . would bear no relationship to that isolated event.

The employer's argument is further supported by the Physician Report of Syam Stoll, MD . . . [who] concurred with Dr. Agnew[.]

Upon appeal, the Board of Review adopted the findings and conclusions of the Office of Judges and affirmed its decision by order entered on February 20, 2020.

The standard of review applicable to this Court's consideration of this workers' compensation appeal is set forth in West Virginia Code § 23-5-15 (2005), in relevant part, as follows:

(b) In reviewing a decision of the board of review, the supreme court shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . .

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the supreme court of appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record. If the court reverses or modifies a decision of the board pursuant to this subsection, it shall state with specificity the basis for the reversal or modification and the manner in which the decision of the board clearly violated constitutional or statutory provisions, resulted from erroneous conclusions of law, or was based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. [6]

---

[6] West Virginia Code § 23-5-15 was amended in 2021 after this appeal was filed with the amended version becoming effective on June 30, 2021. The subsections quoted

(Footnote added).

Upon review of the record, we find no error. For an additional diagnosis to be added to a claim, it must be causally related to the initial compensable injury or events that caused the compensable injury. In other words, the criteria for holding an additional diagnosis compensable is the same as that for the initial injury. As set forth in syllabus point one of *Barnett v. State Workmen's Compensation Commissioner*, 153 W.Va. 796, 172 S.E.2d 698 (1970). "In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment." This Court has observed that "[p]ursuant to W. Va. Code § 23-4-1g(a) (2003) (Repl. Vol. 2010), a claimant in a workers' compensation case must prove his or her claim for benefits by a preponderance of the evidence." Syl. Pt. 2, *Gill v. City of Charleston*, 236 W.Va. 737, 783 S.E.2d 857 (2016). In this case, the decision of the Office of Judges, as affirmed by the Board of Review, is supported by a preponderance of evidence indicating that the petitioner's septic knee is a chronic disease process that did not result from his reported September 1, 2017, work injury. Accordingly, the Board of Review did not err in denying the request to hold the claim compensable for the petitioner's septic knee diagnosis nor did it err in denying authorization for treatment of that diagnosis. Therefore, the September 20, 2020, decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:** November 5, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

above were redesignated as (c) and (d) respectively and other stylistic changes were made, but the language was not altered.