**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2016 Term**

_____

No. 14-0983

_____

**FILED**
**February 10, 2016**
**released at 3:00 p.m.**
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**WILLIAM L. GILL,**
**Claimant Below, Petitioner**

**V.**

**CITY OF CHARLESTON,**
**Respondent Below, Respondent**

_____

**Appeal from West Virginia Workers' Compensation**
**Board of Review**
**Claim No. 2012026734**

**AFFIRMED**

_____

**Submitted: January 26, 2016**
**Filed: February 10, 2016**

Patrick K. Maroney                                     James W. Heslep
Maroney, Williams, Weaver & Pancake, PLLC              Steptoe & Johnson PLLC
Charleston, West Virginia                              Charleston, West Virginia
Attorney for Petitioner                                Attorney for Respondent

William B. Gerwig, III                                 Lisa Warner Hunter
Charleston, West Virginia                              Michelle Rae Johnson
Pro Se Amicus Curiae                                   Pullin, Fowler, Flanagan,

**Brown & Poe, PLLC**
**Charleston, West Virginia**
**Attorneys for Amicus Curiae,**
**The Defense Trial Counsel of**
**West Virginia**

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment."  Syllabus point 1, *Barnett v. State Workmen's Compensation Commissioner*, 153 W. Va. 796, 172 S.E.2d 698 (1970).

2.      Pursuant to W. Va. Code § 23-4-1g(a) (2003) (Repl. Vol. 2010), a claimant in a workers' compensation case must prove his or her claim for benefits by a preponderance of the evidence.

3.      A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury.  To the extent that the aggravation of a noncompensable preexisting injury results in a discreet new injury, that new injury may be found compensable.

**Davis, Justice:**

This appeal was filed by William L. Gill ("Mr. Gill") from an adverse final order of the Workers' Compensation Board of Review ("the Board"). The Board's order reversed a decision by the Workers' Compensation Office of Judges ("the OOJ"), which had added four new diagnoses to Mr. Gill's initial compensable claim for a lumbar and thoracic sprain injury. The Board found that the additional four diagnoses were noncompensable preexisting conditions. In this appeal, Mr. Gill seeks to have the OOJ's decision reinstated.[1] After a careful review of the briefs, the record submitted on appeal, and listening to the argument of the parties, we affirm.

# I.

## FACTUAL AND PROCEDURAL HISTORY

The facts of this case involve injuries to Mr. Gill's back. Mr. Gill's first back injury appears to have occurred in 1985, when he was 18 years old. This noncompensable injury occurred "when he lifted the door handle up on his car and felt back pain[.]"[2] In 1992, Mr. Gill fell approximately 80 feet while rock climbing. Some of the noncompensable injuries sustained in the fall included: fractured pelvis, fractured sacrum, fractured pedicle,

---

[1]We wish to acknowledge the amicus briefs filed in this matter. The Court has taken into consideration the arguments made on behalf of the City of Charleston by the amicus brief of Defense Trial Counsel of West Virginia and the amicus brief filed by William B. Gerwig, III.

[2]The exact nature of the injury is not known.

fracture of the left tibia and fibula, and injury to internal organs. Mr. Gill's injuries appear to have been treated at a hospital in Pittsburgh, Pennsylvania. In spite of the severe back injuries he sustained in 1992, Mr. Gill passed the firefighters' physical tests in 2002 and was hired by the City's fire department.[3]

Mr. Gill received treatment at Short Chiropractic, Inc. ("chiropractic clinic"), for back problems associated with the 1992 fall. Treatment notes from the chiropractic clinic in April of 2004 indicated that Mr. Gill was being treated for lumbar radiculopathy (diagnosis code 724.3), lumbar disc degenerative disc disease (diagnosis code 722.52), lumbar disc displacement (diagnosis code 722.10), and lumbar facet syndrome (diagnosis code 724.8). Mr. Gill was treated by the chiropractic clinic for thoracic and lumbar complaints during the years 2005, 2006, 2008, 2009, 2011, and 2012. In treatment notes, dated February 7, 2012, the chiropractic clinic indicated Mr. Gill was being treated for thoracalgia (diagnosis code 724.1), sciatica (diagnosis code 724.3), degeneration of lumbar or lumbosacral IVD (diagnosis code 722.52), and muscle spasm (diagnosis code 728.85).

On February 8, 2012, Mr. Gill injured his back while lifting a practice dummy during firefighter training. This injury was ruled compensable and diagnosed as lumbar

_____

[3]In 2003, Mr. Gill allegedly sustained a back injury while playing basketball, purportedly as part of his employment physical training. The extent of the injury is not known, and Mr. Gill did not file a workers' compensation claim for the injury.

(diagnosis code 847.2) and thoracic (diagnosis code 847.1) sprain. In March of 2012, Dr. David Weinsweig examined Mr. Gill and reported that "he suffers from pain temporally related to the injury at work with degenerative disc disease and an element of radiculopathy." In June of 2012, Dr. Bill Hennessey performed an independent medical evaluation of Mr. Gill. Dr. Hennessey reported that Mr. Gill had reached maximum medical improvement and had made a full recovery from the compensable injury without any impairment. As a result of Dr. Hennessey's evaluation, in July of 2012 Mr. Gill was denied a permanent partial disability award for the compensable injury.

In August of 2012, the chiropractic clinic requested authorization for injections to treat Mr. Gill for neuritis/radiculitis (diagnosis code 724.4), sciatica (diagnosis code 724.3), degeneration of lumbar or lumbosacral IVD (diagnosis code 722.52), and facet syndrome (diagnosis code 724.8). The Claim Administrator denied the request based upon Dr. Hennessey's report.[4] Mr. Gill protested the denial of the injections to the OOJ.

While the case was pending before the OOJ, an independent medical evaluation

---

[4]The Claim Administrator had issued orders in July of 2012 that denied authorization for lumbar epidural injections and additional chiropractic treatment. The OOJ reversed the orders and held that the requested treatment "was the result of a compensable aggravation of preexisting conditions[.]" The Board reversed the OOJ decision and remanded for further development of the record. The current status of the issues in that litigation is not known.

3

was performed on Mr. Gill by Dr. P.B. Mukkamala. A medical opinion rendered by Dr. Mukkamala in January of 2013 concluded that Mr. Gill's compensable injury had reached maximum medical improvement and did not aggravate his preexisting injuries.

The OOJ treated the request for authorization for injections for four diagnoses as a request to add the four diagnoses as compensable components of the claim. The OOJ eventually issued an order finding that the four diagnoses, neuritis/radiculitis (diagnosis code 724.4), sciatica (diagnosis code 724.3), degeneration of lumbosacral IVD (diagnosis code 722.52), and facet syndrome (diagnosis code 724.8), were compensable. The OOJ reasoned as follows:

> The record designation demonstrates that the claimant's injury of February 8, 2012, catalyzed or precipitated a disabling aggravation of his preexisting lumbar spine condition. Such aggravation of a preexisting condition by a compensable injury . . . necessarily sanctions the inclusion of the aggravated, preexisting condition as a compensable element of the injury[.]

The City appealed the OOJ decision to the Board. By order entered August 29, 2014, the Board reversed the decision of the OOJ and concluded "that the additional diagnoses are not compensable components of the claim." Mr. Gill filed this appeal.[5]

---

[5]While the case was pending, this Court asked the parties to brief the following issue: "Whether aggravations of pre-existing conditions by work-related injuries are compensable?" The parties filed supplemental briefs in response to the question.

## II.

## STANDARD OF REVIEW

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15 (2005) (Repl. Vol. 2010), in relevant part, as follows:

> (b)  In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions[.]
>
> . . . .
>
> (d)  If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions, there is insufficient support to sustain the decision. The court may not conduct a de novo re-weighing of the evidentiary record. . . .

See *Hammons v. West Virginia Office of Ins. Comm'r*, 235 W. Va. 577, ___, 775 S.E.2d 458, 463-64 (2015).  As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a *de novo* standard of review to questions of law arising in the context of decisions issued by the Board.  *See also Davies v. West Virginia Office of Insurance Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524,

528 (2011). With these standards in mind, we proceed to determine whether the Board committed error in reversing the decision of the OOJ.

## III.

## DISCUSSION

In this proceeding, Mr. Gill asks this Court to reinstate the OOJ decision that added four preexisting noncompensable conditions to his claim. Before we address the merits of Mr. Gill's appeal, we first must place this case in its proper context.

To begin, the record is clear in showing that no physician requested the diagnostic codes 724.4 (neuritis/radiculitis), 724.3 (sciatica), 722.52 (degeneration of lumbosacral IVD), and 724.8 (facet syndrome) be added as compensable elements of Mr. Gill's February 8, 2012, injury. The chiropractic clinic requested authorization from the Claim Administrator to provide Mr. Gill with injections to treat only the four diagnostic codes. After the request was denied by the Claim Administrator, Mr. Gill protested the denial of authorization for the injections. Subsequent to the protest being filed with the OOJ, the OOJ *sua sponte* treated the protest as a request to add the four diagnostic codes to the compensable claim. It does not appear that an objection was made by the City, at the administrative level, to the OOJ's conversion of the protest. In the appeal to this Court, the City has pointed out that no formal request was ever made to add the four diagnostic codes

6

to the claim.[6] Insofar as no objection was made at the administrative level, we find the issue waived for purposes of this appeal. *See Hoover v. West Virginia Bd. of Med.*, 216 W. Va. 23, 26, 602 S.E.2d 466, 469 (2004) ("[I]f a party fails to properly raise a nonjurisdictional 'defense during [an] administrative proceeding, that party waives the defense and may not raise it on appeal.'" (quoting *Fruehauf Trailer Corp. v. Workers' Comp. Appeal Bd.*, 784 A.2d 874, 877 (Pa. Cmwlth. 2001))). Even though the issue has been waived, it helps to explain, as will be shown, why there is a lack of medical evidence to support the OOJ decision.

This Court has set out the framework for finding a workers' compensation claim compensable as follows: "In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment." Syl. pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970). *See also* W. Va. Code § 23-4-1(a) (2008) (Repl. Vol. 2010) ("[W]orkers' compensation benefits shall be paid the Workers' Compensation Fund, to the employees of employers subject to this chapter who have received *personal injuries in the course of and resulting from their covered employment*[.]" (emphasis added)). All three of these elements must be satisfied for an injury to be held compensable.

---

[6]Counsel for the City in this appeal was not counsel below.

7

In the instant proceeding, the record is clear in showing that the four diagnostic codes added by the OOJ were conditions that Mr. Gill was being treated for prior to the occurrence of the compensable injury of February 8, 2012. The OOJ's order specifically stated that "the requested diagnostic codes . . . were also part of the claimant's diagnostic portrait prior to the compensable injury[.]" In view of this fact, we find as a matter of law that the four diagnostic codes were not compensable injuries. We have long held that "[i]n determining whether an injury resulted from a claimant's employment, a causal connection between the injury and employment must be shown to have existed." Syl. pt. 3, *Emmel v. State Comp. Dir.*, 150 W. Va. 277, 145 S.E.2d 29 (1965). No such causal connection with the four diagnostic codes was shown below or in this appeal.

Having determined that the four diagnostic codes were not compensable injuries, we must determine whether any basis existed for the OOJ to rule that these diagnoses were compensable. In making the compensability determination, the OOJ found as follows:

> [T]he fact that the requested diagnostic codes . . . were also part of the claimant's diagnostic portrait prior to the compensable injury, does not preclude their inclusion as compensable elements of the injury due to their *disabling exacerbation* by the compensable injury.

(Emphasis added). From this statement, it is clear that the OOJ found that (1) there was sufficient evidence in the record to show that the compensable injury aggravated the four

8

preexisting diagnostic codes and (2) because of such aggravation, the preexisting injuries could be added as compensable claims. We will address these two issues separately.

**1. Evidence that compensable injury aggravated preexisting injuries.** As previously noted, the OOJ found that Mr. Gill presented sufficient evidence to show that his compensable injury of February 8, 2012, aggravated his preexisting injuries. "We have traditionally held that a workers' compensation claimant has the burden of proving his or her claim by proper and satisfactory proof." *Casdorph v. West Virginia Office Ins. Comm'r*, 225 W. Va. 94, 99, 690 S.E.2d 102, 107 (2009) (citation omitted). However, pursuant to W. Va. Code § 23-4-1g(a) (2003) (Repl. Vol. 2010), a claimant in a workers' compensation case must prove his or her claim for benefits by a preponderance of the evidence. *See City of Wheeling v. Marriner*, No. 14-0498, 2015 WL 465652, at *3 (W. Va. Feb. 3, 2015) (memorandum decision) ("In light of the preponderance of the evidence standard set forth in West Virginia Code § 23-4-1g (2003), [the Board] held that Mr. Marriner was entitled to a 10% permanent partial disability award."); *Sheets v. West Virginia Office of Ins. Comm'r*, No. 11-0100, 2012 WL 3023404, at *1 (W. Va. June 27, 2012) (memorandum decision) ("Mr. Sheets is entitled to a 6% permanent partial disability award based on the preponderance of the evidence standard contained in West Virginia Code § 23-4-1g (2003)."). The record does not support the OOJ's conclusion that Mr. Gill carried his burden.

9

The only medical evidence relied upon by the OOJ to find that the four diagnostic codes were aggravated by the compensable injury was a statement by Dr. Weinsweig in a March 2012 report. In a treatment note, Dr. Weinsweig reported that Mr. Gill "suffers from pain temporally related to the injury at work with degenerative disc disease and an element of radiculopathy." The OOJ interpreted this statement to mean that Dr. Weinsweig "opined that the claimant's current condition was temporarily related to the compensable injury." The OOJ's interpretation is misleading.

When Dr. Weinsweig examined Mr. Gill in March of 2012, it was only a few weeks after the compensable injury of February 8, 2012. Thus, the pain Dr. Weinsweig referred to was pain "temporally related" to the compensable injury. This pain was consistent with the expected duration of the compensable injury. As will be shown, Mr. Gill's compensable injury was expected to be treated for up to four weeks, and not to exceed eight weeks. The OOJ, for reasons unknown, interpreted Dr. Weinsweig's statement to mean that the pain associated with the August 2012 request for authorization for injections by the chiropractic clinic was the same pain that Dr. Weinsweig noted in March of 2012. The record does not support such an interpretation.

In June of 2012, Dr. Hennessey performed an independent medical evaluation of Mr. Gill. In his report, Dr. Hennessey made the following relevant findings:

10

2. Mr. Gill has reached maximum medical improvement in regard to his right thoracic and lumbar strains of 02/08/12. There is insufficient objective medical evidence of any residual physical impairment. He has made a full recovery.

3. Mr. Gill has a very significant medical history of pre-existing back pain dating back to 18 years of age. At about 300 pounds, he is expected to have back pain. Approximately a 100 pound weight loss is recommended. Such weight loss would also very likely improve his longevity in addition to most certainly eliminating his hypertension and his need for blood pressure medication.

4. Treatment. No further medical treatment is recommended. . . . Furthermore, as per West Virginia Rule 20, it is noted in regard to spine injuries, such as those of the low back pain that "the estimated duration of care is 0-4 weeks; not to exceed 8 weeks[.]" He is well beyond this time frame. . . .

5. Physical capacities. In the absence of any physical impairment, by definition, there is no applicable disability. . . . Furthermore, in regard to his area of pain which is in the lowest right thoracic region (flank) he has the same thoracic spine MRI findings now as he did back in 2008 and he can work with the same anatomy in 2012 as he did in 2008, 2009, 2010, 2011 and early 2012.

It is clear from Dr. Hennessey's report that Mr. Gill did not have any pain from his compensable injury in June of 2012, and that the pain he was experiencing was the same pain he had before the compensable injury. In other words, Dr. Hennessey reported that the preexisting injuries were not aggravated by the compensable injury.

The conclusion reached by Dr. Hennessey also was reached by Dr. Mukkamala

11

in his report of January 2013. Dr. Mukkamala's report set out the following relevant findings:

> 1. Has the claimant reached maximum medical improvement with regard to the injury of 2/8/2012?
>
> I conclude that the claimant has reached maximum degree of medical improvement with relation to the compensable injury dated 2/8/2012.
>
> 2. Is the claimant in need of additional treatment, specifically injections and continued chiropractic care, as a result of the injury on 2/8/2012?
>
> It is my professional opinion that the claimant does not require any additional treatment other than a home exercise program, There is no indication for any additional chiropractic treatment.
>
> 3. What conditions, if any, does the claimant have directly resulting from the injury of 2/8/2012 other than the compensable lumbar and thoracic sprain/strains?
>
> I conclude that the claimant had 847.1 thoracic sprain and 847.2 lumber sprain resulting from the compensable injury dated 2/8/1012. . . . There were no other conditions caused by this compensable injury. . . .

It is clear that Dr. Mukkamala found that the compensable injury resolved itself and that it did not aggravate any preexisting injuries.

In summation, Mr. Gill failed to produce any medical evidence that his compensable injury of February 8, 2012, aggravated his preexisting noncompensable injuries. The only medical evidence in the record submitted in this appeal that addressed the issue of

12

the impact of the compensable injury on preexisting injuries was provided by Dr. Hennessey and Dr. Mukkamala. Both physicians concluded that the compensable injury did not aggravate the preexisting injuries.

The conclusion we have reached on this issue also was addressed in *Johnson v. Advanced Diesel Technologies, LLC*, No. 14-0068, 2015 WL 2166822, at *2 (W. Va. May 7, 2015) (memorandum decision). In *Johnson*, the claimant injured his back on June 17, 2011, while at work, and filed a claim for workers' compensation benefits. The claim was held compensable for a lumbar strain. The claimant underwent numerous examinations because of pain that was not consistent with the compensable injury. In spite of such complaints of pain, the claimant was eventually found to have reached maximum medical improvement related to his compensable lumbar sprain. A physician subsequently submitted a request that displacement of lumbar intervertebral disc be added as a compensable condition of the claim. This request was denied on the grounds that the injury was a preexisting condition that was not aggravated by the compensable lumbar strain. On appeal, this Court affirmed as follows:

> Mr. Johnson has not demonstrated that he suffered displacement of lumbar or unspecified intervertebral discs. The imaging studies in the record indicate that Mr. Johnson's L3-4 and L4-5 disc bulges pre-existed the June 17, 2011, injury. . . . The evidence in the record further indicates that this pre-existing condition was not aggravated by the June 17, 2011, injury because his disc protrusions were symptomatic immediately prior to the injury in this claim. Although Mr. Johnson's

13

> requests include two distinct diagnosis codes, in its February 5,
> 2014, Order, the Office of Judges correctly determined that both
> diagnoses referred to the same pre-existing condition.

*Johnson*, 2015 WL 2166822, at *3. *See also Destefano v. Severstal Wheeling, Inc*., No. 12-0002, 2013 WL 5989270, at *3 (W. Va. Nov. 7, 2013) (memorandum decision) ("The evidence in the record shows that Mr. Destefano did not suffer an aggravation of his pre-existing degenerative disc disease as a result of his compensable injury.").

**2. Finding noncompensable preexisting injuries to be compensable when aggravated by a compensable injury.** We have concluded that no evidence supported the determination of the OOJ that Mr. Gill's compensable injury aggravated his preexisting injuries. Because of this conclusion, ordinarily there would be no need to reach the second issue resolved by the OOJ. That is, the determination by the OOJ that, as a result of the compensable injury aggravating the preexisting injuries, the preexisting injuries can be added as compensable injuries. This erroneous finding by the OOJ was the basis of this Court's request that the parties brief the following issue: "Whether aggravations of pre-existing conditions by work-related injuries are compensable?" Insofar as this Court asked the parties to brief the question, we will address it in the context of the erroneous ruling of the OOJ.

In finding that noncompensable preexisting injuries could be added to a claim as compensable injuries, when they are aggravated by a compensable injury, the OOJ relied

14

upon the decisions in *Charlton v. State Workmen's Compensation Commissioner*, 160 W. Va. 664, 236 S.E.2d 241 (1977), and *Jordan v. State Workmen's Compensation Commissioner*, 156 W. Va. 159, 191 S.E.2d 497 (1972). Neither case supported the OOJ's conclusion on this issue.

To begin, in *Charlton* the claimant developed ulcerated feet as a result of working in mine water containing magnetite, sulphuric acid, grease, oil, and kerosene. The claimant filed a workers' compensation claim as a result of his ulcerated feet. The claim was denied because the claimant had a preexisting noncompensable blood vessel disease known as Buerger's Disease. The claim was denied even though the evidence showed that the claimant's ulcerated feet may have resulted from an aggravation of the Buerger's Disease. On appeal, this Court reversed. In doing so, we relied upon two previous decisions rendered by this Court. *Charlton* noted that, in *Hall v. Compensation Commissioner*, 110 W. Va. 551, 159 S.E. 516 (1931), this Court held:

> "The fact that an employee, injured in performing services arising out of and incidental to his employment, was already afflicted with a progressive disease that might some day have produced physical disability, is no reason why the employee should not be allowed compensation, under Workmen's Compensation Act, for the injury which, added to the disease, superinduced physical disability."

*Charlton*, 160 W. Va. at 667, 236 S.E.2d at 243 (quoting Syl., *Hall*, 110 W. Va. 551, 159 S.E. 516). The decision in *Charlton* also cited to *Manning v. State Compensation*

15

*Commissioner*, 124 W. Va. 620, 22 S.E.2d 299 (1942), where it was held:

> "A diseased workman who in the course of and resulting from his employment receives an injury, which aggravates or accelerates the disease, to the extent of causing a disability sooner than would otherwise have occurred, is entitled to compensation from Workmen's Compensation Fund."

*Charlton*, 160 W. Va. at 667, 236 S.E.2d at 243 (quoting Syl. pt. 3, *Manning*, 124 W. Va. 620, 22 S.E.2d 299).

In the instant case, the decision in *Charlton* does not support the decision of the OOJ to add four preexisting back conditions as compensable components of Mr. Gill's claim. This is because *Charlton* did not state that the preexisting Buerger's Disease was a compensable injury. Instead, *Charlton* held that the claim of ulcerated feet was compensable, even though it may have resulted only because of the noncompensable disease. Assuming, for the sake of argument, that Mr. Gill's lumbar and thoracic injuries on February 8, 2012, resulted only because of his preexisting injuries, *Charlton* would require adding only the lumbar and thoracic injuries as compensable claims. Thus, *Charlton* did not support the decision of the OOJ to add the preexisting injuries as compensable injuries.

In the *Jordan* decision relied upon by the OOJ, the claimant alleged that he injured his back while lifting a box at work. At the time of the injury, the claimant had a noncompensable preexisting back injury. At the administrative level it was determined that

16

the claimant did not suffer a compensable injury at work. On appeal, this Court affirmed after concluding that the evidence was conflicting as to whether the claimant actually sustained an injury at work. The opinion went on to discuss the issue of a work injury and a preexisting injury:

> This Court has often recognized that a preexisting infirmity of an employee does not disqualify him from prosecuting a successful claim for compensation based upon a new injury arising from his employment. . . . But where there is evidence of a preexisting like injury, his new claim will not be treated as compensable unless it is directly attributable to a definite, isolated and fortuitous occurrence, that is to say, from a definable incident resulting from his employment. The preexisting condition . . . does not dispense with the necessity of showing that the injury was actually caused by an accident or injury received in the course of and arising from the employment. . . . Our statute so requires. . . .
>
> Although recognizing that the employer must take the employee as he finds him–with all of his attributes and all of his previous infirmities, it is also axiomatic that the employer, by subscribing to the workmen's compensation fund, does not thereby become the employee's insurer against all ills or injuries which may befall him. . . .

*Jordan*, 156 W. Va. at 165-66, 191 S.E.2d at 501 (internal quotations and citations omitted).

Although the decision in *Jordan* recognized that a compensable injury cannot be denied because of the existence of a noncompensable preexisting injury, that case rejected the notion that a noncompensable preexisting injury could, in and of itself, be deemed compensable. Nothing in *Jordan* supported the decision of the OOJ to add Mr. Gill's preexisting injuries as compensable components of the claim.

In the recent decision in *AT&T Mobility Services, LLC v. Spoor*, No. 14-0396, 2015 WL 6840126 (W. Va. Nov. 4, 2015) (memorandum decision), we applied *Charlton* and *Jordan* to uphold the compensability of injuries occurring because of a preexisting condition. In *AT&T,* the claimant, while standing, injured her back when she merely turned around to answer a question by a co-worker. The claimant was diagnosed with cervical, thoracic, and lumbar sprain, as well as a right knee sprain. The Claim Administrator rejected the claim. The OOJ reversed and found that the claimant was injured during the course of and as a result of her employment. The Board affirmed. The employer appealed and argued that the claimant had a preexisting back problem that caused the injuries and therefore compensability could not be found. We affirmed the compensability determination after citing to *Charlton* and *Jordan* for the proposition that a preexisting injury does not preclude a new compensable injury from arising. We stated that "[b]ecause the evidence establishes that she was injured in the course of and as a result of her employment, the Office of Judges and Board of Review were correct in holding the claim compensable for a cervical strain, thoracic spine strain, lumbar strain, and a right knee injury." *AT&T*, 2015 WL 6840126, at *2. *See also Robinson v. General Glass Co.*, No. 14-0643, 2015 WL 6844975, at *4 (W. Va. Nov. 4, 2015) (memorandum decision) ("While there was ample evidence of previous back and hip problems, this Court has consistently held that a preexisting condition will not bar a claimant from receiving workers' compensation benefits for an injury that occurs in the course of and as a result of their employment."); *Johnson v. Mid-Ohio Valley Transit Auth.,*

18

*Inc.*, No. 14-0152, 2014 WL 6461647, at *2 (W. Va. Nov. 14, 2014) (memorandum decision) ("The Office of Judges found that the evidence of record demonstrating the existence of pre-existing neck pain fails to prove that Mr. Johnson did not sustain a new work-related injury to his neck on October 14, 2011."); *Fulton v. West Virginia Office of Ins. Comm'r*, No. 101267, 2012 WL 3176364, at *2 (W. Va. June 14, 2012) (memorandum decision) ("[A] claim may be held compensable when a work-related injury aggravates a preexisting condition.").

Mr. Gill also has cited to the decision in *Dunlap v. State Workmen's Compensation Commissioner*, 152 W. Va. 359, 163 S.E.2d 605 (1968), as support for the decision of the OOJ. In *Dunlap*, the claimant injured her back at work while lifting a one or two pound cafeteria tray. The injury was ruled compensable as a back sprain. The employer appealed the compensability ruling. This Court found that there was evidence that the claimant had a prior back injury. However, we affirmed the compensability ruling because it did "not appear from the record that the diagnoses of low back strain or sprain could have been confused with the preexisting condition disclosed by the X-ray report." *Dunlap*, 152 W. Va. at 365, 163 S.E.2d at 609. *Dunlap* is consistent with *Charlton* and *Jordan* and does not support the decision of the OOJ in this case.

The *Charlton*, *Jordan*, and *Dunlap* line of cases all recognize compensability

19

of an injury that may have occurred only because of a preexisting injury. These cases do not stand for the proposition that merely because a noncompensable preexisting injury was aggravated, it is fully compensable. It is only a new injury resulting from the aggravation of the preexisting injury that becomes compensable. This proposition is consistent with our apportionment statute, W. Va. Code § 23-4-9b (2003) (Repl. Vol. 2010).[7]

The apportionment statute is invoked when a claimant seeks a disability award. This statute reads, in relevant part, as follows:

> Where an employee has a definitely ascertainable impairment resulting from an occupational or a nonoccupational injury . . . and the employee thereafter receives an injury in the course of and resulting from his or her employment, . . . the prior injury, and the effect of the prior injury, and an aggravation, shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury. Compensation shall be awarded only in the amount that would have been allowable had the employee not had the preexisting impairment. . . .

The apportionment "statute is designed to separate out preexisting disability from the disability arising from the current compensable injury where less than total disability is sought." *Gallardo v. Workers' Comp. Comm'r*, 179 W. Va. 756, 760 n.5, 373 S.E.2d 177, 181 n.5 (1988). That is, it "directs that any preexisting impairment be deducted from any

---

[7]"The term 'apportionment' is used because the statute is designed to separate out preexisting disability from the disability arising from the current compensable injury where less than total disability is sought." *Gallardo v. Workers' Comp. Comm'r*, 179 W. Va. 756, 759 n.5, 373 S.E.2d 177, 180 n.5 (1988).

impairment resulting from an occupational injury." *Rose v. West Virginia Office of Ins. Comm'r*, No. 101552, 2012 WL 3205835, at *2 (W. Va. June 18, 2012) (memorandum decision).

Insofar as the apportionment statute does not permit a claimant to receive a permanent partial disability award for a noncompensable preexisting injury, it stands to reason that such a preexisting injury cannot be ruled compensable. We therefore make clear, and so hold, that a noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a discreet new injury, that new injury may be found compensable.[8]

---

[8]Our holding is not applicable to this case because Mr. Gill failed to produce any medical evidence to show that his compensable injury aggravated his preexisting injuries and because Mr. Gill's noncompensable preexisting injuries did not result in a discreet new injury.

21

**IV.**

**CONCLUSION**

In view of the foregoing, the order of the Workers' Compensation Board of Review, dated August 29, 2014, is affirmed.

Affirmed.