**FILED**
**November 9, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**RAMACO RESOURCES, INC.,**
**Employer Below, Petitioner**

**vs.)    No. 19-1163** (BOR Appeal No. 2054430)
              (Claim No. 2018024130)

**CHARLES ROLLINS,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Respondent Charles Rollins filed a claim for workers' compensation benefits after he injured his right wrist at work on April 20, 2018. His employer, Petitioner Ramaco Resources, Inc. (Ramaco), questioned compensability of the claim because Mr. Rollins broke that wrist at home on January 5, 2018, and had recently returned to work. The claim administrator initially rejected the claim but on appeal, the Workers Compensation Office of Judges (OOJs) held the claim compensable on July 1, 2019. The West Virginia Board of Review (Board of Review) affirmed the decision of the OOJs and adopted its findings of fact and conclusions of law by Order dated November 22, 2019.

On appeal to this Court, Ramaco argues that the Board of Review committed clear error because a preponderance of the evidence establishes that Mr. Rollins merely aggravated his preexisting, noncompensable injury that had not healed. Ramaco states that the Board of Review failed to apply this Court's holding in *Gill v. City of Charleston*,[1] that a noncompensable, preexisting injury is not compensable merely because it was aggravated by a compensable injury. Mr. Rollins responds that the Board of Review's ruling is supported by the record including the opinion of his treating orthopedic surgeon who stated that the April 20, 2018, injury was a discreet new injury.

---

[1] *See* Syl. Pt. 3, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016) ("A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a discreet new injury, that new injury may be found compensable.").

1

The Court has considered the parties' briefs, oral arguments, and the record on appeal.[2] As explained below, this Court is of the opinion that the decision of the Board of Review is clearly wrong based on the evidentiary record. While there is evidence to support its factual findings, on review, this Court is left with the firm conviction that a mistake has been committed. A preponderance of the evidence demonstrates that Mr. Rollins exacerbated his previous noncompensable wrist fracture while at work on April 20, 2018. So, under *Gill*, this injury is not compensable. Because this case presents no substantial question of law, it satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for a memorandum decision.

## I. Factual and Procedural History

Mr. Rollins, a diesel mechanic, injured his right wrist when he fell at his home on January 5, 2018. He sought treatment from Logan Regional Medical Center Emergency Room and an x-ray showed an acute distal radial fracture. Robert McCleary, D.O., treated Mr. Rollins for the injury and diagnosed a closed extra-articular fracture of the distal end of the right radius. He performed surgery on Mr. Rollins on January 9, 2018. X-rays after the surgery on February 5, 2018, and March 5, 2018, both showed routine healing of the fracture. Mr. Rollins returned to Dr. McCleary after he had completed physical therapy. Mr. Rollins reported some stiffness and weakness in the wrist on April 2, 2018. Dr. McCleary stated that Mr. Rollins could return to work on April 9, 2018, without restrictions.

Mr. Rollins returned to full-duty work. On April 20, 2018, Mr. Rollins injured the same wrist at work while loosening a bolt with a ratchet on a piece of heavy equipment. He immediately notified Ramaco and sought treatment at Logan Regional Medical Center Emergency Room, where he reported that his right wrist popped while he was loosening a bolt with a pipe wrench. An x-ray showed a slightly impacted fracture at the volar aspect of the distal radial metaphysis. The diagnosis was right wrist fracture.[3]

The April 20, 2018 Employees' and Physicians' Report of Injury stated Mr. Rollins injured his right hand at work that day. Mr. Rollins stated that he was loosening a bolt and when it came loose, his hand was jarred, and his wrist popped. The physician's section was completed at Logan Regional Medical Center and states Mr. Rollins sustained an occupational wrist fracture. It was also indicated that the injury aggravated a prior right wrist fracture.

Caryn Merton, Ramaco's Vice President of Human Resources, questioned Mr. Rollins's injury in the Employers' Report of Injury dated April 23, 2018. Ms. Merton stated that when Mr. Rollins was allegedly injured, he did not hit his arm and the ratchet did not slip off the bolt. She noted that Mr. Rollins recently broke the same wrist in a non-work-related injury.

[2] Ramaco is represented by Sean Harter, Esq. Mr. Rollins is represented by Edwin H. Pancake, Esq.

[3] Mr. Rollins filed a previous workers' compensation claim for an injury to his left wrist which occurred on October 16, 2017, about three months after he was hired by Ramaco.

Mr. Rollins was treated by Dr. McCleary on April 23, 2018. He noted that Mr. Rollins had hand swelling and tenderness in the distal radius. Dr. McCleary also noted that an x-ray showed a nondisplaced distal radius fracture. Dr. McCleary also diagnosed a right wrist ulnar joint sprain. Mr. Rollins was advised to wear a splint for four weeks and undergo an MRI. On April 30, 2018, Dr. McCleary noted that Mr. Rollins had severe swelling and numbness in his right thumb and was showing symptoms consistent with complex regional pain syndrome. X-rays taken that day showed a nondisplaced distal radius fracture.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation of Mr. Rollins on May 1, 2018, and reviewed various medical reports and x-rays. In his May 3, 2018 report, Dr. Mukkamala concluded that Mr. Rollins did not sustain a new injury on April 20, 2018. The x-ray performed on April 30, 2018, showed that the fracture was still visible and healing. Dr. Mukkamala believed that Mr. Rollins's prior right wrist fracture had not completely healed when the work incident occurred. He also noted that the x-rays revealed osteopenia, which was noncompensable.

The claim administrator rejected the claim on May 3, 2018, and in subsequent decisions denied authorization of payment for various medical services. Mr. Rollins appealed.

Mr. Rollins returned to Dr. McCleary on May 7, 2018. Dr. McCleary stated in medical records that Mr. Rollins's previous right wrist fracture completely healed by the time he returned to work. He believed that Mr. Rollins was unable to return to work at that time. A May 8, 2018 right wrist MRI showed a nondisplaced fracture of the distal radius. On May 11, 2018, Dr. McCleary noted that Mr. Rollins had swelling in his right hand and digits due to a work injury. He stated that Mr. Rollins had previously injured the wrist, healed from the injury, and returned to work.

Mr. Rollins testified in a September 11, 2018, deposition that he fractured his wrist at home on January 5, 2018. He underwent surgery and physical therapy and was able to return to work. Mr. Rollins stated that he had no problems performing his full job duties when he returned to work in April. Mr. Rollins stated that he was removing a bolt with a ratchet when he jarred his right wrist and developed pain on April 20, 2018.

Dr. McCleary testified in a deposition on November 5, 2018, that Mr. Rollins injured his right wrist on January 5, 2018, when he fell at home. Dr. McCleary stated that during the three months following the injury, he saw no indication of complications and x-rays showed normal healing of the fracture. On cross-examination, Dr. McCleary stated that the March 5, 2018, x-ray was the last x-ray taken of the right wrist until the injury of April 20, 2018. So, there was no x-ray evidence that showed that the fracture had fully healed prior to the injury of April 20, 2018. But Dr. McCleary testified that Mr. Rollins had fully healed and was released to return to work at full duty. Dr. McCleary stated that the April 20, 2018, injury was a new injury that was separate from the first wrist fracture in that it showed more displacement.

Syam Stoll, M.D., evaluated Mr. Rollins at the request of Ramaco on January 10, 2019. Dr. Stoll requested that an expert interpret the x-rays. So, Jonathan Luchs, M.D., a board-certified radiologist, compared the x-rays taken of Mr. Rollins's right wrist on January 5, March 5, and April 20, 2018, and rendered four reports dated March 4, 2019. He concluded that a January 5, 2018, right wrist x-ray (performed three months prior to the alleged work injury) showed an acute fracture of the distal radius and x-rays performed on April 20, 2018, showed a slightly impacted fracture of the distal radius. Dr. Luchs concluded that the x-rays showed a chronic healing distal radial fracture. Based on Dr. Luchs's findings, Dr. Stoll agreed with Dr. Mukkamala's assessment that Mr. Rollins did not sustain a new injury on April 20, 2018. Dr. Stoll believed that Mr. Rollins's initial fracture had not fully healed before he returned back to work. Dr. Stoll also stated that the x-rays revealed osteopenia, which was noncompensable. Finally, he noted that while the treating physician was requesting authorization for an MRI, an MRI would not add any information to help the decision-making process here.

In its July 1, 2019 Order, the OOJs reversed the claim administrator's decision and held the claim compensable for distal radius fracture and right wrist ulnar joint sprain. The OOJs found that Mr. Rollins sustained a compensable injury on April 20, 2018, and Mr. Rollins's description of his injury was consistent and supported by the medical evidence of record and the Report of Injury. The OOJs also found that the injury was a new injury, separate from his prior right wrist fracture, based largely on the records of the treating physician, Dr. McCleary. The OOJs found the opinions of Drs. Mukkamala, Stoll, and Luchs to be less reliable than that of Dr. McCleary because Dr. McCleary had the benefit of treating Mr. Rollins for both wrist injuries. The OOJs concluded that the claim should be held compensable for distal radius fracture and right wrist ulnar joint sprain. The OOJs remanded several claim administrator's decisions denying treatment related to the right wrist fracture with instructions to reconsider them, in light of the compensability ruling.

The Board of Review affirmed the Order of the OOJs and adopted its findings of fact and conclusions of law.

## II. Standard of Review

Our standard of review in workers' compensation cases is set by statute. West Virginia Code § 23-5-15(b) provides, in relevant part, that deference shall be given to the Board of Review's "findings, reasoning and conclusions." In this case, by affirming the OOJs, the Board of Review effectively reversed the denial of the claim by the claim administrator. So, subsection (d) of the statute is applicable which provides a detailed basis for our review:

> (d) If the decision of the board effectively represents a reversal of a prior ruling of either the commission or the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provisions, is clearly the result of erroneous conclusions of law, or is so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the board's findings, reasoning and conclusions,

4

there is insufficient support to sustain the decision. The court may not conduct a de novo re-weighing of the evidentiary record[.]

The issue before us is whether the decision of the Board of Review, favorable to Mr. Rollins and based on the evidentiary findings of the OOJs, should be affirmed. We remain mindful that the issue before the OOJs regarding compensability was a question of fact, not law.[4] As we have explained, "[a] finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[5]

## III. Analysis

Under West Virginia Code § 23-4-1g(a) (2003), "a claimant in a workers' compensation case must prove his or her claim for benefits by a preponderance of the evidence." And "[i]n order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment."[6] In this case, the OOJs found that Mr. Rollins satisfied all three elements, by a preponderance of the evidence, and the Board of Review affirmed that ruling.

Ramaco first argues that the Board of Review's Order upholding the OOJs' compensability ruling is clearly wrong and contrary to the preponderance of the evidence. Ramaco states that substantial medical evidence shows that Mr. Rollins's noncompensable, wrist fracture of January 5, 2018, had not healed by the time he allegedly injured himself at work on April 20, 2018. Ramaco states that Dr. Luchs, Dr. Mukkamala, and Dr. Stoll all stated that Mr. Rollins merely aggravated a previous noncompensable injury. Mr. Rollins responds that simply because he suffered a prior fracture to the same body part does not now immunize Ramaco from responsibility in this claim. And Mr. Rollins contends that it is clear he was injured at work on April 20, 2018, considering he promptly reported the injury and sought medical attention. Mr. Rollins states that it was proper for the OOJs and Board of Review to give considerable weight to the medical opinion of Dr. McCleary who provided treatment for his compensable injury and the prior wrist fracture.

Under a preponderance of the evidence standard, the trier of fact is tasked with the duty of weighing the quality of the evidence to arrive at a decision that is supported by the record taken as a whole. In this case, the OOJs found the testimony of Mr. Rollins and the reports and testimony of his treating physician credible and compelling. And, while it was within the OOJs' province to do so, the OOJs arbitrarily disregarded a substantial amount of evidence including the findings by Drs. Luchs, Mukkamala, and Stoll. For example, the OOJs observed that "neither Dr. Mukkamala

[4] *Jordan v. State Workmen's Comp. Comm'r*, 156 W. Va. 159, 167, 191 S.E.2d 497, 502 (1972).

[5] Syl. Pt. 1, in part, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

[6] Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r,* 153 W. Va. 796, 172 S.E.2d 698 (1970).

5

nor Dr. Stoll explain how Mr. Rollins could perform his strenuous work duties involving the right wrist with a non-healed fracture and experience no pain or problems." But it is entirely plausible that although Mr. Rollins was asymptomatic when he returned to work in April 2018, his wrist fracture of January 5, 2018, had not healed at the time he aggravated that fracture at work on April 20, 2018. Dr. McCleary's x-ray reports dated February 5, 2018, and March 5, 2018, establish that the noncompensable wrist fracture of January 2018, had partially healed but not fully healed. And Dr. McCleary admitted that he had released Mr. Rollins to return to work in early April of 2018, without having first obtained an x-ray establishing that the previous wrist fracture had fully healed.

Because we are dealing with a wrist fracture, the x-ray evidence is critical. Dr. Luchs, a board-certified radiologist, analyzed the x-rays taken of Mr. Rollins's right wrist on January 5, March 5, and April 20, 2018, and determined that the January 2018 fracture had not healed as of April 20, 2018. Dr. Luchs stated, unequivocally, that the abnormalities revealed by the x-rays taken of Mr. Rollins's wrist following the injury of April 20, 2018, including the fracture of the distal radius, date back to January 2018. The OOJs erroneously discounted this objective x-ray evidence in lieu of Dr. McCleary's self-serving, subjective belief. Importantly, Dr. Luchs' findings are entirely consistent with the evaluation findings rendered by Drs. Mukkamala and Stoll. Inferring that Dr. McCleary subjectively believed that Mr. Rollins's fracture was completely healed, and that Mr. Rollins suffered a new injury, his belief is insufficient to support the compensability ruling when the other experts produced evidence showing that Mr. Rollins merely aggravated the preexisting injury. So, even when all inferences are resolved in favor of the OOJs' and Board of Review's findings, there is insufficient evidence to sustain the decision.

Ramaco next argues that the OOJs and Board of Review erred by failing to cite or discuss this Court's holding in *Gill*. We agree. Because a preponderance of the evidence in this case demonstrates that Mr. Rollins aggravated his noncompensable wrist fracture while at work on April 20, 2018, *Gill* is a barrier to compensability. So, the OOJs and Board of Review committed legal error by failing to apply *Gill* to the facts presented.

For these reasons, the November 22, 2019, decision of the Board of Review is reversed and remanded.

Reversed and Remanded.

**ISSUED:** November 9, 2021


**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead

6

**CONCURRING AND WRITING SEPARATELY:**

Chief Justice Evan H. Jenkins
Justice Tim Armstead

**DISSENTING AND WRITING SEPARATELY:**

Justice John A. Hutchison
Justice William R. Wooton

JENKINS, C.J. Concurring, joined by ARMSTEAD, J.:

The majority's judgment is correct, so I join in its decision. I write separately because the dissenting opinions mischaracterize the Court's comprehensive review of the record as finding facts. The dissents fail to recognize that the claimant bears the burden to prove by a preponderance of the evidence each element of his claim for workers' compensation benefits. The Court will not set aside the ultimate conclusion of a fact finder for being against the weight of the evidence unless it is clearly wrong.[7] Here, the majority correctly determines that the overwhelming weight of the evidence demonstrates that Mr. Rollins merely aggravated a pre-existing injury to his right wrist while at work on April 20, 2018. Accordingly, this injury is not compensable under *Gill v. City of Charleston*,[8] and the lower tribunals clearly erred by finding otherwise.

The majority correctly holds that the findings of fact of the Office of Judges (adopted by the Board of Review) were clearly erroneous. The most frequently expressed statement of the meaning of "clear error" review was first provided by the United States Supreme Court in *United States v. U.S. Gypsum Co.*: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[9] This Court has repeatedly used this formulation.[10]

Some examples of clear error can be readily imagined. There might be no evidence at all to support a finding of fact, or the finding might be controverted by indisputable evidence, as in this case, by the x-ray evidence interpreted by Jonathan Luchs, M.D., a board-certified radiologist. Situations might also arise where the evidence opposed to the claimant's version, though not indisputable, has overwhelming persuasive force. This is also the situation here when the x-ray

---

[7] W. Va. Code § 23-5-15(b).

[8] 236 W.Va. 737, 783 S.E.2d 857 (2016).

[9] 333 U.S. 364, 395 (1948).

[10] *See e.g.*, Syl. Pt. 1, in part, *In Interest of Tiffany Marie S.*, 196 W. Va. 23, 470 S.E.2d 177 (1996).

evidence is coupled with opinions of three examining physicians who all concluded that Mr. Rollins did not suffer a discreet, new injury at work.

No one can doubt that, considering (as must be done) the totality of circumstances, there is room for profound skepticism as to whether Mr. Rollins suffered a discreet new injury to his right wrist while at work on April 20, 2018. The evidence is uncontroverted that Mr. Rollins had just returned from an extended medical leave of absence after he fractured the same wrist at home on January 5, 2018. His wrist surgery pre-dated the work injury at issue and the subsequent x-rays showed a healing, but not healed, fracture. For this objective reason, several medical examiners concluded that the previous wrist fracture had not fully healed by the time Mr. Rollins returned to work. Based on the totality of the evidence, the majority logically details the reason why it formed a definite and firm conviction that a mistake had been made when reversing the Board of Review. I therefore concur.


HUTCHISON, J., dissenting:

This memorandum decision violates the fundamental process due to every party in a lawsuit: that an appellate court will not substitute its own findings of fact for those of a lower tribunal merely because it disagrees with those findings. True, the majority decision *quotes* the proper process; the problem is, it ignores that process, and it swaps its own findings of fact in place of those made by an administrative law judge because it disagrees with those findings. I must, therefore, dissent.

Every workers' compensation case boils down to a debate over one sentence in one section of the West Virginia Code. West Virginia Code § 23-4-1 tells us that "workers' compensation benefits shall be paid . . . to the employees of employers . . . who have received personal injuries in the course of and resulting from their covered employment[.]" This case is a debate over whether the claimant, Mr. Rollins, received a personal injury in the course of and resulting from his employment. Mr. Rollins offered an administrative law judge evidence showing he did suffer an injury, while the employer presented evidence showing he did not. With the issue so joined, which party to believe was exclusively within the remit of the judge.

The majority decision claims it is "mindful" of the proper procedure it should follow. The decision notes, in passing, a century-old point of law: that disputes of fact like the one presented in this workers' compensation case are to be resolved solely by an administrative law judge or other hearing board. This Court has repeatedly said that it would "show substantial deference to the factual findings of the Workers' Compensation Appeal Board[.]" *Plummer v. Workers Comp. Div.*, 209 W. Va. 710, 712, 551 S.E.2d 46, 48 (2001). As Justice Haden said almost half a century ago, "[w]hether the employment aggravated or[] combined with the internal weakness or infirmities of claimant to produce the injury, *is a question of fact, not law*, and a finding of the board on this question will not be disturbed on appeal." *Jordan v. State Workmen's Comp. Comm'r*, 156 W. Va. 159, 167, 191 S.E.2d 497, 502 (1972) (emphasis added). And just shy of a century ago, this Court said that the resolution of a question of fact in a workers' compensation

case would "be treated as the verdict of a jury" and would not be disturbed on appeal. In *Stone v. Compensation Commissioner*, 106 W. Va. 572, 146 S.E. 372, 374 (1929), we said:

> As a general rule, the extent of permanent disability, occasioned by an accident, not being capable of exact measurement . . . , its determination is a question of fact which rests within the sound discretion of the compensation commissioner, under the facts and circumstances of each particular case. And such a finding of fact by the commissioner is to be treated as the verdict of a jury or the finding of a judge, and will not be set aside, if there is evidence to support it, especially where the evidence is conflicting.

(Citations omitted.)

Furthermore, in any number of criminal and civil cases, this Court has approved instructions empowering juries to decide each and every factual question. In my two-and-a-half decades as a circuit judge, before my appointment and election to this Court, I gave the following instruction, in every case, to every jury:

> While you must carefully consider the testimony of each and every witness and not disregard or overlook any testimony, witness or evidence, the jury is the final judge of the credibility of the witnesses and the weight of the evidence. The number of witnesses testifying on one side or the other of an issue is not the only test of weight and credibility. If you feel the evidence justifies it, you may believe one witness over a number of witnesses testifying differently. The test is, how truthful is the witness and how convincing is the testimony in light of all the evidence and circumstances shown. As jurors, you are also entitled to draw reasonable inferences and make reasonable deductions from any of the testimony or other evidence as you come to believe are justified in light of reason, common sense and experience.

The rule that the majority decision is "mindful" of is quite simple: when the parties present conflicting evidence, this Court will defer to the solution devised by the administrative law judge. In this case, the majority decision casually dispenses with any notion of deference to this process and imposes its own verdict on the evidence.

The facts of this case are simple: the claimant broke his wrist at home in January 2018, in what everyone agrees was a non-industrial accident. However, the claimant and his treating doctor say that over the next three-and-a-half-months, the injury healed – so much so that the claimant returned to work and successfully did his job for about two weeks. Then, in the course of his employment, the claimant turned a wrench on a tight bolt and felt a "pop" in his wrist on April 20, 2018. The claimant's doctor found that the wrist had re-broken, and he offered testimony showing

9

the new break was more serious than the damage done in January. The claimant made a claim for workers' compensation benefits based on his doctor's opinion.

The majority decision is written in a way that suggests the claimant mysteriously received "an independent medical evaluation" by three doctors who believed the claimant never healed from his January 2018 wrist break and, thus, never sustained a new work-related injury in April 2018. But these practitioners of the medical arts were not "independent." They were hired by the employer's workers' comp insurance company. More importantly, speaking from experience as a Justice, the opinions of some of these paid-for "experts" routinely appear in the thousands of workers' compensation cases that are appealed to this Court. Their opinions consistently skew in favor of the insurance companies that hire them. Nevertheless, the workers' comp insurer relied on the paid-for opinions of these experts as reason to deny the claimant any workers' compensation benefits.

The claimant appealed his denial of benefits to an administrative law judge who reviews workers' compensation cases day in and day out. The law governing the question was clear: "To the extent that the aggravation of a noncompensable preexisting injury results in a discreet new injury, that new injury may be found compensable." Syl. pt. 3, in part, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016). The judge heard the witnesses, reviewed the evidence, and concluded that the claimant sustained a new, compensable injury to his wrist by doing what fact-finders do every day: he rejected the expert testimony offered by the employer in favor of the expert testimony offered by the claimant. The judge found the claimant's evidence was more credible than the employer's. That decision was appealed, and the Workers' Compensation Board of Review came to the same conclusion: the claimant's evidence proved he received a personal injury in the course of, and resulting from, his employment.

The western legal tradition is well known to any experienced lawyer or judge: when the parties have a dispute, they present their evidence guided by centuries of rules of procedure to a finder of fact who reaches a decision applying the law to the facts. The fact-finder sees the witnesses, judges their demeanor, and decides which testimony is more or less believable. Again and again, even if this Court has disagreed with the decision, we have chosen to support the finder of fact's decision. The majority decision chooses to ignore this basic system of due process and adds a new layer: on appeal, if the appellate judges feel the evidence should have reached a different result, then the appellate judges can substitute their gut reaction for that of the fact-finder.

I do not say this lightly. This memorandum decision subverts the fundamental process due to every litigant. This administrative judge does workers' comp cases every day, and he sees the same lawyers bring the same "expert witnesses" to hearings on a daily basis. The judge hears every insurance-company lawyer claim their expert's testimony was the result of an "independent medical evaluation." It is solely a judge or jury's duty to find whether witnesses are credible enough to support a claim. And, as I noted earlier, juries are routinely told that the number of witnesses testifying on one side or the other of an issue is not a determinative factor.

Somehow, this memorandum decision subverts this trial process and decides that because the employer paid for three witnesses and the claimant only presented one, then the employer's

10

case *must* be more persuasive. Despite the employer's insurer paying for the opinions of its three witnesses, the majority decision converts those three opinions into irrefutable "objective x-ray evidence" whilst simultaneously calling the opinion by the claimant's doctor nothing more than his "self-serving, subjective belief."

Moreover, the decision's declaration is absurd: x-ray films are not "objective" because, until they are interpreted by a doctor, they have little meaning. An "x-ray" is a hazy picture representing electromagnetic radiation that passed through the body and was captured on film or electronic sensors. It is a doctor, a trained human being, who gazes at the picture and offers a personal opinion about the meaning of the fuzzy representations presented. Some of these doctors pay to take a test that gets them "certified" by a "board." That personal opinion is guided by years of training and experience, but it is still nothing more than a calculated judgment. Obviously, that opinion can be swayed, be perverted, or be just dead wrong. Or, in the majority decision's case, an opinion is "objective" if paid for by one party and a "self-serving, subjective belief" if offered by another.

Finally, I believe the concurrence offered by my colleagues proves rather than undermines my position. The concurrence suggests that I am mischaracterizing the record. The concurrence says that when an insurance company pays for the opinion of a "board-certified radiologist," that opinion is "indisputable evidence" or has "overwhelming persuasive force." Most importantly, my concurring colleagues think "there is room for profound skepticism" of the claimant's case because "clear error can be readily imagined." Propelled by that "profound skepticism," the concurrence says that evidence from the three experts hired by the workers' comp insurer created an "objective reason" to conclude the ALJ clearly erred in relying on the claimant's treating physician.

Justice Cleckley, the dean of evidence in West Virginia, warned this Court against doing exactly what the memorandum decision did in this case: using "clear error" as a cudgel to substitute its own interpretation of the evidence in favor of the ALJ's. He said the clear error rule "does not entitle a reviewing court to reverse the finder of fact simply because it may have decided the case differently." *Bd. of Educ. of Cty. of Mercer v. Wirt*, 192 W. Va. 568, 578-79, 453 S.E.2d 402, 412-13 (1994). Justice Cleckley also said,

> clear-error review ordinarily heralds a rocky road for an appellant. *Under this standard, appellate courts cannot presume to decide factual issues anew.* Our precedent ordains that deference be paid to the trier's assessment of the evidence. Moreover, the clearly erroneous rule loses none of its rigor "when the [lower] court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518, 528 (1985). In the last analysis, an appellate tribunal should not upset findings of fact or conclusions drawn therefrom unless, on the whole of the record, the judges form a strong, unyielding belief that a mistake has

11

been made. Under this standard, *as long as the lower court's rendition of the record is plausible, our inquiry is at an end.*

*Fraternal Ord. of Police, Lodge No. 69 v. City of Fairmont*, 196 W. Va. 97, 101 n.4, 468 S.E.2d 712, 716 n.4 (1996) (emphasis added).

The ALJ's conclusion was plausible on the record below, and that should have been the end of this Court's inquiry. The record clearly supports the ALJ's factual finding, as well as supports the Board of Review's affirmance of the judge's decision. The majority decision was clearly wrong in its decision to impose its after-the-fact judgment of the evidence. The fact that a claimant may have suffered a prior fracture to the same body part as the one injured in the workplace should not immunize an employer from responsibility for the claim. I respectfully dissent from this memorandum decision's subversion of the fact-finding process.

WOOTON, J., dissenting:

West Virginia Code § 23-5-15(d) (2021) expressly forbids this Court from conducting a "de novo reweighing of the evidentiary record" of the decisions of the Office of Judges and Board of Review on appeal of a workers compensation claim. Nevertheless, the majority wades neck-deep into the various radiology reports, treatment records, and expert reports to reach its ultimate conclusion about which evidence was more credible and of the greater cumulative weight. I believe the decision of the majority is contrary to the law; accordingly, I respectfully dissent.

The ultimate issue in this case is whether Mr. Rollins sustained a new fracture following his work injury of April 20, 2018 or merely continued to exhibit the prior, healing fracture he sustained in January of that year. The facts bearing on that issue are straightforward. Following his January 5, 2018 right wrist fracture, Mr. Rollins had two subsequent x-rays, both of which showed a healing fracture. The last x-ray on March 5, 2018—a little over a month and a half prior to his work injury—showed the fracture healing. One month later—on April 9, 2018— Mr. Rollins was then released to full-duty work with no restrictions and exhibiting no clinical signs of an unhealed fracture. In fact, over the course of the next eleven days, Mr. Rollins performed heavy, labor-intensive duties as diesel mechanic including "using impact wrenches, swinging a hammer, using pry bars, climbing up and down ladders" without difficulty. On April 20, while loosening a bolt, the bolt broke loose and jarred his wrist, causing it to "pop" and resulting in immediate pain and swelling.

Mr. Rollins' treating orthopedic surgeon testified that he was certain Mr. Rollins sustained a discrete, new injury[11] on that date as evidenced by 1) the immediate pain and swelling; 2) the passage of time from the prior injury, which allowed for complete healing; 3) the greater amount

---

[11] The Office of Judges agreed with this finding of a "discrete new injury," plainly applying the holding *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016). As such, contrary to the majority's assertion, the Office of Judges did not fail to consider *Gill*—it simply reached a different conclusion about whether its holding was satisfied.

12

of displacement of the fracture from the first fracture, as shown on x-ray; and 4) an MRI which showed the distal radius fracture in a "different formation" than the first fracture. All of this was carefully discussed by the Office of Judges, which found Dr. McCleary's perspective as both Mr. Rollins' treating physician and an experienced orthopedic surgeon to be worthy of greater weight than the other evaluators. Despite this well-substantiated expert opinion which is entirely consistent with the factual and clinical evidence, the majority dismisses Dr. McCleary's position as a mere "self-serving, subjective belief."

Further, by no means did the Office of Judges "arbitrarily disregard[]" the counter-vailing evidence as the majority alleges; in fact, it dedicated seven single-spaced pages to discussing the various aspects of that evidence, addressing inconsistencies and the relative credibility and weight to give to that evidence. This examination and weighing of the evidence is, by statute, within the Office of Judges' *exclusive* province and was done in exacting fashion. In particular, after an examination of each medical report, radiologic film, and expert report, the Office of Judges concluded that Dr. McCleary's opinions were more consistent with the medical and non-medical evidence and that the opinions of Drs. Mukkamala, Stoll, and Luchs were less reliable because 1) Dr. McCleary had the benefit of treating Mr. Rollins for both wrist injuries; 2) Dr. McCleary was an experienced orthopedic surgeon, in contrast to Dr. Mukkamala, a physiatrist, and Dr. Stoll, an occupational medicine specialist; 3) Dr. Stoll read no radiology films, but merely relied on the film reviews of Dr. Luchs, who did not even review the MRI which showed the differing formation of the fracture; and 4) "neither Dr. Mukkamala nor Dr. Stoll explain how Mr. Rollins could perform his strenuous work duties involving the right wrist with a non-healed fracture and experience no pain or problems." Despite admitting that it was within the Office of Judges' province to undertake this assessment, the majority substitutes its own analysis.

Finally, the majority not only violates the prohibition on reweighing evidence; it falls victim to faulty conclusions imbedded in some of the medical evidence which the Office of Judges carefully and painstakingly debunked in its decision. The majority states that the March 5 x-ray—taken nearly *two months* prior to Mr. Rollins' work injury—"establish[es]" that Mr. Rollins' fracture had not yet fully healed and that Dr. Luchs' reading of the x-rays constitutes further "objective" evidence that the fracture remained unhealed. However, as the Office of Judges astutely noted, "[t]he absence of an x-ray at or near the time of Dr. McCleary's release of Mr. Rollins to return to work . . . does not constitute proof of a non-healed fracture." Further, while the x-rays themselves may constitute objective evidence, Dr. Luchs' interpretation of them certainly is not. Therefore, while the majority may contend that its decision simply reverses an insufficiently supported determination on the basis of undisputed "objective" evidence, it has done nothing more than make itself a surrogate fact-finder in contravention of West Virginia Code § 23-5-15(d).

Accordingly, I respectfully dissent.

13