IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**November 18, 2022**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**LINDA A. WATSON,**
**Claimant Below, Petitioner**

**vs.)   No. 22-ICA-37**      (BOR Appeal No. 2057832)
                                        (Claim No. 2020024829)

**HOMER LAUGHLIN CHINA COMPANY,**
**Employer Below, Respondent**

### MEMORANDUM DECISION

Petitioner Linda A. Watson appeals the July 22, 2022, order of the Board of Review ("Board"). Respondent Homer Laughlin China Company ("Homer Laughlin") filed a timely response.[1] Petitioner did not file a reply brief. The issue on appeal is whether the Board erred in affirming the claims administrator's decision denying petitioner's right knee instability as a compensable condition of the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's Order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 22, 2020, Ms. Watson (claimant) was working as an employee for Homer Laughlin when she tripped over a brick and landed on her left side, injuring her hip and elbow. Ms. Laughlin presented to the office of Atul Shetty, M.D., on May 29, 2020, complaining of left hip and elbow bruising. Ms. Watson also complained that she had a "catch" in her right knee since the fall. Dr. Shetty noted that Ms. Watson had experienced pain in the right knee prior to the fall but that her "perceived instability" and reliance on a cane had arisen after the fall.

By order dated June 11, 2020, the claim administrator held the claim compensable for left hip contusion and left elbow contusion. Ms. Watson did not protest this order. Thereafter, Ms. Watson attended follow-up visits with Dr. Shetty in June, July, September, and October of 2020, wherein she continued to complain of right knee pain and right knee instability. On October 19, 2020, Dr. Shetty completed a Diagnosis Update form,

---

[1] Petitioner is represented by Patrick K. Maroney, Esq. Respondent is represented by Kristy L. Eiter, Esq.

1

requesting that instability of the right knee be added as compensable conditions of the claim. The claim administrator denied the request to add the condition of right knee instability as a compensable condition by order dated January 26, 2021. Ms. Watson protested this order.

As part of the protest, Homer Laughlin submitted several of Ms. Watson's medical records demonstrating her pre-existing knee condition and related treatment. For instance, records demonstrated that Ms. Watson complained of knee issues as early as March of 2014 and received physical therapy. Medical records showed that Ms. Watson suffered from chronic joint pain and was observed to have an unsteady gait and was unable to tolerate standing for longer than ten minutes. The records further revealed that Ms. Watson had a history of degenerative joint disease in both knees and that she needed to have a knee replacement but did not. Medical records from Ms. Watson's cardiologist, Christopher M. Wentz, M.D., noted that Ms. Watson reported that an orthopedic surgeon had opined that her right knee was "beyond surgery."

Homer Laughlin also submitted a file review report authored by Stephen J. Voto, M.D. Dr. Voto opined that Dr. Shetty's examination of Ms. Watson revealed no objective documentation or evidence of instability. Dr. Voto explained that, in his medical opinion, instability "must be documented by specific findings, such as [a] tear in either a collateral or cruciate ligament." However, x-rays of Ms. Watson's knee revealed no such tear. Rather, Dr. Voto noted, the x-rays showed that Ms. Watson had end-stage osteoarthritis requiring a total joint replacement, which had no relationship to her work-related injury.

Ms. Watson submitted her testimony via deposition in April of 2021. Ms. Watson testified that her knee began hurting the morning after the work-related injury and that she had to use a cane because she felt as though she would fall while walking. Ms. Watson admitted to having some issues with her knee prior to the work-related injury but denied needing a cane. Ms. Watson stated that she had not had treatment for her knee in approximately five years and was able to work regularly prior to the injury.

By order dated January 3, 2022, the Office of Judges affirmed the claim administrator's order denying right knee instability as a compensable condition. The Office of Judges found that the medical evidence established that Ms. Watson had a significant pre-existing medical history regarding her right knee. Per Ms. Watson's own reports to her various doctors, she admitted that she had been advised that she had a history of degenerative joint disease, needed a total knee replacement, and demonstrated weakness in her knee. As such, the Office of Judges concluded that, prior to the work-related injury, Ms. Watson's functionality was affected by chronic right knee pain and that she had difficulty ambulating. The Office of Judges further found that the evidence failed to establish a medical reason for instability, citing Dr. Voto's file review report. The Office of Judges noted that no tears had been identified and that Dr. Shetty's clinical notes revealed that Ms. Watson had subjective instability. In sum, because Ms. Watson had pre-

2

existing issues with her right knee and there was no medical reason for Ms. Watson's instability, the Office of Judges found no error in the claim administrator's order denying the addition of a compensable condition. The Board adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the January 3, 2022, order on July 22, 2022. Ms. Watson now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

On appeal, Ms. Watson argues that the lower tribunals erred in denying her right knee instability as compensable. Ms. Watson states that the medical evidence demonstrates that she aggravated a pre-existing knee condition when she fell at work and that, but for her fall, she "would not have sustained a new injury to her knee." Ms. Watson contends that she never denied that she had a pre-existing knee condition but argues that the compensable injury exacerbated the condition to the extent that she can no longer perform her work duties. Ms. Watson also states that Homer Laughlin's reliance on medical records of Dr. Wentz is misplaced as those records are not as reliable as those of her treating physician, Dr. Shetty, who found that the work-related injury created a "new problem" with regard to her knee. As such, Ms. Watson contends the Board should have found the evidence weighed in Ms. Watson's favor. Upon our review, we find no error.

The Supreme Court of Appeals of West Virginia has previously held that

> [a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting

3

injury results in a [discrete] new injury, that new injury may be found compensable.

Syl. Pt. 3, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016). However,

A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

Syl. Pt. 5, *Moore v. ICG Tygart Valley*, LLC, No. 20-0028, -- W. Va. --, -- S.E.2d --, 2022 WL 1262269 (W. Va. Apr. 18, 2022).

First, there is no evidence that the aggravation of Ms. Watson's knee condition resulted in a discrete new injury as required by *Gill*. While Ms. Watson claims that Dr. Shetty diagnosed her with a "new problem," she fails to cite to the record demonstrating a new discrete diagnosis. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires, in relevant part, that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." Second, Ms. Watson fails to meet the requirements of either prong of *Moore*. The record is clear that Ms. Watson had a pre-existing right knee condition that was symptomatic prior to the work-related injury. Medical documentation establishes that Ms. Watson underwent treatment such as physical therapy and cortisone shots for complaints of chronic right knee pain prior to the work-related injury. Ms. Watson also had been observed to have difficulty ambulating or standing for longer than ten minutes, and she admitted to Dr. Wentz that she had a degenerative issue with her knee that required a knee replacement. Additionally, there was no objective medical evidence showing a causal relationship between the work-related injury and Ms. Watson's right knee instability. Dr. Voto opined that there were no tears in Ms. Watson's knee to cause any instability and that her end-stage osteoarthritis was not related to the injury. Moreover, medical records described Ms. Watson's right knee instability as "subjective" and "perceived." As such, none of the requirements from *Gill* or *Moore* have been met, and the lower tribunals did not err in denying the addition of Ms. Watson's right knee instability as a compensable condition of the claim.

Accordingly, we affirm.

Affirmed.

4

**ISSUED:** November 18, 2022

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen