# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**TIMOTHY GIBSON,**
**Claimant Below, Petitioner**

**FILED**
**February 15, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 22-ICA-280    (JCN: 2019026835)**

**BLACKHAWK MINING, LLC,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Timothy Gibson appeals the November 3, 2022, order of the Workers' Compensation Board of Review ("Board"). Respondent employer Blackhawk Mining, LLC ("Blackhawk Mining") filed a timely response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order that denied the addition of right rotator cuff tear as a compensable component of Mr. Gibson's claim and denied authorization for physical therapy.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Relevant to this appeal, Mr. Gibson has a history of degenerative issues and pain in his right shoulder. Medical records demonstrate that Mr. Gibson underwent a right shoulder x-ray in March of 2014, which revealed mild arthritic changes in the acromioclavicular ("AC") joint. In November of 2014, Mr. Gibson sought medical treatment for complaints of pain, reduced range of motion, and limited strength in the right shoulder. In May of 2017, Mr. Gibson again sought treatment for right shoulder pain and was diagnosed with right shoulder tendinitis. Another medical record dated November of 2017 noted a diagnosis of right shoulder tendonitis.

Regarding the instant claim, on June 21, 2019, Mr. Gibson fell at work and injured his right shoulder. He sought medical attention on June 24, 2019, and was diagnosed with a right shoulder sprain. Mild AC degenerative changes were also noted. Mr. Gibson completed an Employees' and Physicians' Report of Occupational Injury on June 25, 2019,

---

[1] Mr. Gibson is represented by Reginald D. Henry, Esq. and Lori J. Withrow, Esq. Blackhawk Mining, LLC is represented by Sean Harter, Esq.

1

and, according to the physician's portion of the form, he had sustained an occupational injury resulting in a right shoulder strain.

On July 9, 2019, Mr. Gibson underwent an MRI of the right shoulder, which revealed AC joint degenerative hypertrophy with mild impingement, a moderately large incomplete articular surface tear of the supraspinatus tendon (also referred to as a rotator cuff tear throughout the record), probable tendinosis of the superior aspect of the subscapularis tendon, and probable adhesive capsulitis.

On July 27, 2019, the claim administrator held the claim compensable for right shoulder sprain/strain. Mr. Gibson did not protest the order.

On August 12, 2019, Mr. Gibson underwent an independent medical evaluation ("IME") performed by Prasadarao Mukkamala, M.D. Dr. Mukkamala opined that Mr. Gibson's compensable injury was limited to right shoulder strain, noting that the MRI findings were degenerative in nature. Dr. Mukkamala specifically noted that the supraspinatus tear was chronic in nature and unrelated to the compensable injury. He concluded that Mr. Gibson had reached maximum medical improvement ("MMI") for the compensable injury and required no further treatment.

On August 20, 2019, Mr. Gibson was evaluated by S. Brett Whitfield, M.D. During the evaluation, Mr. Gibson denied having any right shoulder pain prior to the June 21, 2019, work incident. Dr. Whitfield diagnosed Mr. Gibson with asymptomatic AC joint arthrosis of both shoulders, a moderate grade partial thickness articular sided rotator cuff tear, and a right shoulder rotator cuff contusion. He also noted arthritic changes at the AC joint that were not related to the compensable injury. Dr. Whitfield opined that the rotator cuff tear did not require surgery.

On February 13, 2020, Michael Muscari, D.O., completed a diagnosis update form requesting that right shoulder strain, capsulitis of the right shoulder, strain of the right supraspinatus muscle, and strain of the right supraspinatus tendon be added as compensable diagnoses in the claim. He did not, however, request that the rotator cuff tear be added to the claim.

Dr. Mukkamala authored a report dated February 26, 2020, reiterating his opinion that Mr. Gibson had reached MMI and required no further treatment for the compensable injury. He further opined that he disagreed with Dr. Muscari's request for a diagnosis update, as the only compensable injury was the right shoulder strain. Subsequently, Dr. Muscari authored a letter opining that the supraspinatus/rotator cuff tear should also be added to the claim.

In July of 2020, Kenneth Fortgang, M.D., performed an age of injury analysis of Mr. Gibson's right shoulder. Dr. Fortgang reviewed the July 9, 2019, MRI and found that

2

the supraspinatus and subscapularis tendinosis, articular sided tear of the supraspinatus tendon, and adhesive capsulitis were all likely chronic conditions. He further noted no specific acute abnormalities on the MRI. Jonathan Luchs, M.D., also performed an age of injury analysis in July of 2020, and opined that Mr. Gibson's x-ray findings were chronic in nature.

By order dated March 15, 2021, the Office of Judges ("OOJ") modified the claim administrator's order and added right rotator cuff tear as a compensable condition in the claim and authorized physical therapy. Blackhawk Mining protested.

On May 4, 2021, Mr. Gibson underwent MRIs of the right and left shoulder. The right shoulder MRI revealed a partial articular surface sided tear at the insertion of the supraspinatus tendon measuring at least 50% of the tendon thickness, a similar appearance of supraspinatus tendinosis, a one-to-two-millimeter articular sided partial tear of the infraspinatus tendon, and moderate arthrosis of the AC joint. The MRI of the left shoulder revealed a mild abnormal signal near the labrum indicating a possible SLAP type tear, a partial thickness tear involving the supraspinatus tendon and intersection of the supraspinatus and infraspinatus tendon with an estimated 50% involvement, a superior infraspinatus tendon tear, and moderate arthrosis of the AC joint.

Mr. Gibson sought treatment from Robert Kropac, M.D., in August and September of 2021, with complaints of right and left shoulder pain. Dr. Kropac diagnosed Mr. Gibson with a labrum tear in both shoulders and partial tears of the supraspinatus and infraspinatus tendons with 50% tear involvement. Dr. Kropac recommended referral to an orthopedic surgeon and corticosteroid injections in both shoulders.

On September 27, 2021, the Board vacated the OOJ's order, and remanded the claim to the claim administrator with instructions to issue an order addressing the compensability of Mr. Gibson's right rotator cuff tear and his request for physical therapy.

On October 13, 2021, Dr. Mukkamala authored a supplemental report in which he opined that Mr. Gibson did not sustain a rotator cuff tear as a result of the compensable injury. Dr. Mukkamala pointed out that Mr. Gibson exhibited right shoulder symptoms prior to the injury and that both Dr. Fortgang and Dr. Luchs opined that the imaging findings were chronic in nature. According to Dr. Mukkamala, Mr. Gibson did not require any further treatment for his compensable injury. Subsequently, on October 28, 2021, Dr. Muscari authored a letter opining that Mr. Gibson's supraspinatus tear was attributable to his work-related injury. On October 14, 2021, the claim administrator denied the addition of Mr. Gibson's right rotator cuff tear as a compensable condition of the claim and denied authorization for physical therapy.

On January 20, 2022, Mr. Gibson underwent an IME by Syam Stoll, M.D. Dr. Stoll opined that Mr. Gibson sustained a right shoulder strain injury, but that the documentation

did not support an acute right rotator cuff tear occurring from the work-related injury. Dr. Stoll reviewed imaging performed prior to the injury and noted that Mr. Gibson had "extensive pre-existing degenerative joint disease: Chronic acromioclavicular joint (AC) . . . space narrowing, subchondral marginal osteophyte; chronic dystrophic ossicle at superior AC joint, chronic osteoarthropathy based on surrounding soft tissue changes; and chronic soft tissues calcification at the posterior aspect of the greater tuberosity." According to Dr. Stoll, these findings would not have occurred on an acute basis and, rather, would have taken years to develop. He further opined that they would not have occurred based on the mechanism of injury. Dr. Stoll stated that Mr. Gibson described the mechanism of injury as diving to the ground and onto his right shoulder to avoid falling rocks. Based on Mr. Gibson's BMI, Dr. Stoll opined that such a scenario would have resulted in a complete rupture of the rotator cuff, a possible clavicle fracture, or an acute shoulder dislocation. However, none of these injuries occurred, and the x-rays and MRIs did not support an acute rotator cuff injury. As such, Dr. Stoll found Mr. Gibson to be at MMI for his right shoulder strain and opined that no further medical treatment was necessary.

On May 4, 2022, Mr. Gibson underwent an IME by Bruce Guberman, M.D. While Dr. Guberman acknowledged that Mr. Gibson had range-of-motion abnormalities in his uninjured left shoulder, he stated that they were significantly milder than those in the right shoulder, which he attributed to the work-related injury. Dr. Guberman opined to a reasonable degree of medical probability that Mr. Gibson suffered a right shoulder rotator cuff tear due to the work-related injury and recommended that the diagnosis be added to the claim.

By order dated November 3, 2022, the Board affirmed the claim administrator's order denying the rotator cuff tear as a compensable condition in the claim and denying authorization for physical therapy. The Board noted that Dr. Mukkamala, Dr. Fortgang, and Dr. Stoll all opined that the tear was degenerative in nature and unrelated to the compensable injury. The Board found that Mr. Gibson had been diagnosed with right shoulder tendonitis and had documented pain, reduced range of motion, and limited strength in his right shoulder prior to the June 21, 2019, injury. The Board also found that an MRI of Mr. Gibson's uninjured left shoulder performed on May 4, 2021, showed degenerative findings that mirrored the imaging studies of the injured right shoulder. In fact, Dr. Kropac had diagnosed labrum tears in both shoulders and partial tears of the supraspinatus tendon and infraspinatus tendon in both shoulders. The Board acknowledged Dr. Muscari's and Dr. Guberman's opinions that the tear at issue was causally related to the injury but found that neither physician explained the relationship between the tear and the compensable injury. Accordingly, the Board concluded that the preponderance of the evidence demonstrated that Mr. Gibson's right shoulder supraspinatus tear/right rotator cuff tear is not causally related to the compensable injury, and that the claim administrator's order denying its addition to the claim should be affirmed. Because the request for physical therapy was directed at treating the tear, which was not compensable, the Board likewise

4

concluded that the claim's administrator's order denying authorization for physical therapy should be affirmed. Mr. Gibson now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n,* No. 22-ICA-10, __ W. Va. __, __, __ S.E.2d __, __, 2022 WL 17546598, at *4 (Ct. App. Dec. 9, 2022).

On appeal, Mr. Gibson argues that the Board erred in affirming the claim administrator's order denying the addition of a right rotator cuff tear to the claim and denying authorization for physical therapy. Mr. Gibson avers that the preponderance of the evidence demonstrates that he sustained the rotator cuff tear as a direct result of the compensable injury. While Mr. Gibson admits that he was diagnosed with tendonitis two years prior to the injury, he had never been diagnosed with a rotator cuff tear and had been performing his duties as a roof bolter without issue. However, following the compensable injury, Mr. Gibson suffered from right shoulder pain, popping, and grinding with motion, and he was no longer able to perform his duties. Mr. Gibson claims that he has met the requirements for adding a preexisting condition to the claim per Syllabus Point 5, *Moore v. ICG Tygart Valley*, LLC, No. 20-0028, __ W. Va. __, 879 S.E.2d 779 (Apr. 28, 2022), as he was asymptomatic immediately prior to the injury, his symptoms have continuously manifested since that time, and he can no longer perform his same job duties. He further argues that because his right shoulder rotator cuff tear should be added as a compensable condition in the claim, physical therapy for that condition should be authorized.

Upon review, we find no error in the Board's order denying the addition of right shoulder rotator cuff tear to the claim and denying authorization for physical therapy. As noted by the Board, Mr. Gibson had significant preexisting degenerative issues with his

shoulders that were documented prior to the work-related injury. Mr. Gibson was diagnosed with conditions such as tendonitis and arthritic changes in the AC joint for which he sought treatment. Following the injury, Dr. Fortgang and Dr. Luchs performed age of injury analyses and determined that Mr. Gibson's rotator cuff tear was degenerative in nature. Further, Drs. Mukkamala and Stoll evaluated Mr. Gibson and opined that the right shoulder rotator cuff tear should not be added as a compensable condition in the claim. Importantly, Dr. Kropac diagnosed Mr. Gibson with "[t]ear glenoid labrum *right and left shoulder* with partial tear of the supraspinatus tendon and the infraspinatus tendon." (Emphasis added).

Regarding the addition of preexisting conditions to the claim, the Supreme Court of Appeals of West Virginia has previously held:

> A noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

Syl. Pt. 3, *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016). Furthermore,

> [a] claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

Syl. Pt. 5, *Moore*, __ W. Va. at __, 879 S.E.2d at 781 (2022).

Here, Mr. Gibson fails to demonstrate that his right rotator cuff tear is compensable under *Gill* or *Moore*. Per *Gill*, Mr. Gibson must demonstrate a discrete new injury that is not established by the medical evidence of record. Likewise, per *Moore*, Mr. Gibson must demonstrate that before the injury, the preexisting condition was asymptomatic and he must also demonstrate a causal relationship between the compensable injury and the disability or condition. Mr. Gibson's arguments on appeal fail to establish either of these requirements. Mr. Gibson's medical records demonstrate that he was symptomatic prior to the injury. Further, while Dr. Muscari and Dr. Guberman opined that the rotator cuff tear was related to the compensable injury, neither physician explained a causal connection.

6

Based on the foregoing, we find that the facts do not warrant adding a right rotator cuff tear to the claim as there was not "sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident." *Moore* at __, 879 S.E.2d at 781 syl. pt. 5. Accordingly, Mr. Gibson is entitled to no relief in this regard. Regarding authorization of physical therapy, we likewise find that Mr. Gibson is entitled to no relief as the physical therapy for the rotator cuff tear is not medically related or reasonably required medical treatment for the compensable injury as contemplated by West Virginia Code § 23-4-5 (2003).

Accordingly, we affirm the Board's November 3, 2022, order.

Affirmed.

**ISSUED:** February 15, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

7